COOLEY LLP
JESSICA VALENZUELA SANTAMARIA (220934) (jsantamaria@cooley.com)
ANGELA L. DUNNING (212047) (adunning@cooley.com)
JACQUELINE B. KORT (284370) (jkort@cooley.com)
3175 Hanover Street
Palo Alto, CA 94304-1130
Telephone: (650) 843-5000
Facsimile: (650) 849-7400

Attorneys for Defendant
BLURB, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NARUTO, a Crested Macaque, by and through his Next Friends, PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC., and ANTJE ENGELHARDT, Ph.D., <br><br> Plaintiffs, <br><br> v. <br><br> DAVID JOHN SLATER, an individual, BLURB, INC., a Delaware corporation, and WILDLIFE PERSONALITIES, LTD., a United Kingdom private limited company, <br><br> Defendants. | Case No. 15-cv-04324 (WHO) <br><br> **DEFENDANT BLURB, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT FOR COPYRIGHT INFRINGEMENT; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> Date: January 6, 2016 <br> Time: 2:00 p.m. <br> Courtroom: 2, 17th Floor <br> Judge: Hon. William H. Orrick <br> Trial Date: Not Yet Set <br><br> **COMPLAINT FILED: SEPTEMBER 21, 2015** |

# TABLE OF CONTENTS

**PAGE**

NOTICE OF MOTION AND MOTION TO DISMISS ................................................................1

STATEMENT OF RELIEF SOUGHT .....................................................................................1

STATEMENT OF ISSUES TO BE DECIDED .......................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ..........................................................2

I. INTRODUCTION ...........................................................................................................2

II. STATEMENT OF RELEVANT FACTS AND ALLEGATIONS ...................................2

    A. Defendant Blurb ...................................................................................................2

    B. Defendant Slater and Wildlife Personalities .......................................................3

    C. The Monkey Selfies .............................................................................................3

    D. The Lawsuit .........................................................................................................4

III. LEGAL STANDARDS ...................................................................................................4

    A. Dismissal for Lack of Standing (Rules 12(b)(1) and 12(b)(6)) .............................4

    B. Dismissal for Failure to State a Claim (Rule 12(b)(6)) .........................................5

IV. ARGUMENT ...................................................................................................................6

    A. The Complaint Should Be Dismissed for Lack of Article III Standing ................6

    B. The Complaint Should Be Dismissed for Lack of Statutory Standing ..................8

    C. The Complaint Should Be Dismissed as to Blurb for Failure To State a Claim ...11

V. CONCLUSION ..............................................................................................................12

# TABLE OF AUTHORITIES

**PAGE**

**Cases**

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ...................................................................................................... 5, 6

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ........................................................................................................... 5

*Burrow-Giles Lithographic Co. v. Sarony*,
 111 U.S. 53 (1884) ........................................................................................................ 8, 10

*Cetacean Cmty. v. Bush*,
 386 F.3d 1169 (9th Cir. 2004) ........................................................................... 4, 5, 8, 9, 10

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
 598 F.3d 1115 (9th Cir. 2010) ......................................................................................... 4, 7

*Daniels-Hall v. Nat'l Educ. Ass'n*,
 629 F.3d 992 (9th Cir. 2010) ................................................................................................ 6

*Davis v. Fed. Election Comm'n*,
 554 U.S. 724 (2008) ............................................................................................................. 4

*Fox Broad. Co., Inc. v. Dish Network L.L.C.*,
 747 F.3d 1060 (9th Cir. 2014 ............................................................................................. 11

*Garcia v. Google, Inc.*,
 786 F.3d 733 (9th Cir. 2015) ............................................................................................ 8, 9

*Inhale, Inc. v. Starbuzz Tobacco, Inc.*,
 755 F.3d 1038 (9th Cir. 2014) .............................................................................................. 8

*Lujan v. Defs. of Wildlife*,
 504 U.S. 555 ................................................................................................................ 4, 6, 7

*Perfect 10, Inc. v. Amazon.com, Inc.*,
 508 F.3d 1146 (9th Cir. 2007) ............................................................................................ 11

*Perfect 10, Inc. v. Giganews, Inc.*,
 No. CV11-07098-AHM (SHx), 2013 WL 2109963 (C.D. Cal. March 8, 2013) ................ 11

*In re Rigel Pharms., Inc. Sec. Litig.*,
 697 F.3d 869 (9th Cir. 2012) ................................................................................................ 5

*Rosen v. eBay, Inc.*, No.
 CV 13-6801 MWF, 2015 WL 1600081 (C.D. Cal. Jan. 16, 2015) .................................... 11

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

ii.

**BLURB INC.'S MOTION TO DISMISS COMPLAINT
CASE NO. 15-CV-04324 (WHO)**

# TABLE OF AUTHORITIES
# (CONTINUED)

**PAGE**

*Steel Co. v. Citizens for a Better Env't*,
 523 U.S. 83 (1998) .............................................................................................. 4, 5, 6

*Tilikum v. Sea World Parks & Entertainment, Inc.*,
 842 F. Supp. 2d 1259 (S.D. Cal. 2012) ...................................................................7, 11

*Urantia Foundation v. Maaherra*,
 114 F.3d 955 (9th Cir. 1997) ........................................................................................10

*Warren v. Fox Family Worldwide, Inc.*,
 328 F.3d 1136 (9th Cir. 2003) ................................................................................... 5, 7

*Wolfe v. Strankman*,
 392 F.3d 358 (9th Cir. 2004) ..........................................................................................5

**Other Authorities**

Federal Rule of Civil Procedure
 12(b)(1) ................................................................................................................ passim
 12(b)(6) ................................................................................................................ passim

U.S Const., Art I, § 8, Clause 8 ...............................................................................................8

The Copyright Act of 1976
 17 U.S.C. § 101 et seq. ...................................................................................................8
 17 U.S.C. § 106 ........................................................................................................ 9, 11
 17 U.S.C. § 201(a) .......................................................................................................11

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

iii.

**BLURB INC.'S MOTION TO DISMISS COMPLAINT**
**CASE NO. 15-CV-04324 (WHO)**

# NOTICE OF MOTION AND MOTION TO DISMISS

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 6, 2015 at 2:00 p.m., or as soon thereafter as this motion may be heard in Courtroom 2, 17th Floor, of the above-entitled court, located at 450 Golden Gate Avenue, San Francisco, California, defendant Blurb, Inc. ("Blurb") will and hereby does move, under Federal Rules of Civil Procedure ("Rules") 12(b)(1) and 12(b)(6), to dismiss the Complaint for Copyright Infringement (the "Complaint") filed on behalf of Naruto, a crested macaque ("Plaintiff"), by and through his Next Friends People for the Ethical Treatment of Animals, Inc. ("PETA") and Antje Engelhardt, Ph.D. (together, "Next Friends") on September 21, 2015. This motion is based on this Notice of Motion; the accompanying Memorandum of Points and Authorities, Request for Judicial Notice ("RJN"), and Declaration of Angela L. Dunning with exhibits thereto ("Dunning Decl."); the pleadings and papers on file in this matter; and such other matters as may be presented to the Court at the hearing.

## STATEMENT OF RELIEF SOUGHT

Defendants seek dismissal of the Complaint under Rules 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim.

## STATEMENT OF ISSUES TO BE DECIDED

**1.** Whether the Complaint should be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) because Naruto, a monkey, lacks Article III standing to pursue a claim for copyright infringement?

**2.** Whether the Complaint should be dismissed pursuant to Rule 12(b)(6) because Naruto lacks statutory standing to pursue a claim for copyright infringement?

**3.** Whether the Complaint should be dismissed pursuant to Rule 12(b)(6) for failure to plead a copyright infringement claim against Blurb?

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This is a copyright case filed on behalf of a monkey. Calling themselves "Next Friends," PETA and a primatologist, Antje Engelhardt, bring this suit on behalf of Naruto, a crested macaque that allegedly took photographs of himself in 2011 using Defendant David John Slater's camera (the "Monkey Selfies"). Next Friends claim that Mr. Slater and defendant Blurb violated Naruto's alleged copyright in the photographs when Mr. Slater published them in a book he made using Blurb's website. In bringing their admittedly "novel" claim, PETA and Dr. Engelhardt ignore the law and abuse the judicial process.

As a threshold matter, Naruto lacks Article III standing to invoke the Court's jurisdiction. Even if Naruto took the Monkey Selfies (a fact contradicted by allegations in the Complaint), he has suffered no injury, much less one that is redressable by this lawsuit. The U.S. Constitution and the Copyright Act contemplate copyright protection only for humans. Accordingly, the action should be dismissed under Rule 12(b)(1) for lack of a justiciable case or controversy.

Dismissal is also appropriate under Rule 12(b)(6) for lack of statutory standing and failure to state a claim. The Copyright Act affords no rights or protections to animals, the courts have repeatedly found that human authorship is required for copyright protection, and the U.S. Copyright Office has outright rejected any assertion that Copyright Act protects "photograph[s] taken by a monkey." Accordingly, Next Friends cannot establish that Naruto owns a valid copyright, much less that it was infringed by Blurb. The entire Complaint should be dismissed with prejudice.

## II. STATEMENT OF RELEVANT FACTS AND ALLEGATIONS

### A. Defendant Blurb

Blurb is a Delaware corporation with its principal place of business in San Francisco, California. (¶ 23.)[1] Blurb provides a website that allows users to create and self-publish their own beautiful, bookstore-quality books. (Ex. 1 ("About Blurb" webpage).)

---

[1] References herein to ¶__ and Ex. __ are to the Complaint (Dkt. 1) and exhibits to the Dunning Declaration, respectively, unless otherwise stated.

Notably, Blurb's website contains an explicit "Disclaimer" that Blurb is not a publisher:

> Please be aware that Blurb is a publishing services provider. We provide users with tools and services that enable them to ***publish their own books***. ***We are not a publisher, and we do not review or correct user-generated content.***

(Ex. 2 (emphasis added).) Moreover, Blurb's "Terms and Conditions" explicitly provide that it is not a publisher:

> YOU ACKNOWLEDGE AND AGREE THAT . . . BLURB IS NOT THE PUBLISHER OF YOUR BOOKS (INCLUDING YOUR BOOK CONTENT) . . . YOU REPRESENT AND WARRANT THAT YOU ARE THE PUBLISHER OF YOUR BOOK(S) (INCLUDING YOUR BOOK CONTENT) AND, IN ANY CASE, THAT YOU BEAR THE FULL AND ULTIMATE RESPONSIBILITY FOR THE PUBLICATION AND DISTRIBUTION OF YOUR BOOKS (INCLUDING YOUR BOOK CONTENT).

(Ex. 3, ¶ 8.5.)

### B. Defendant Slater and Wildlife Personalities

Defendant David John Slater is a professional photographer, residing in the United Kingdom, and the director and sole shareholder of defendant Wildlife Personalities, a private limited liability company based in the U.K. (¶¶ 22, 24.) The Complaint alleges that Slater and Wildlife Personalities utilized Blurb's website to create and publish a book called "Wildlife Personalities" (hereinafter, the "Wildlife Book"), containing the Monkey Selfies. (¶¶ 22–23.)

### C. The Monkey Selfies

The Complaint describes Naruto as a six-year old male crested macaque monkey residing on the Tangkoko Reserve on the island of Sulawesi, Indonesia. (¶ 14.) The Complaint alleges that, on a visit to the Reserve in 2011, Mr. Slater left his camera unattended, whereupon Naruto took the "Monkey Selfies" using Mr. Slater's camera. (¶¶ 31–34.) However, the allegation that Naruto is, in fact, the monkey who took the Monkey Selfies is contradicted by other allegations in the Complaint. Specifically, in the Wildlife Book, Mr. Slater describes the monkey who took the photographs as a *female*, not a male like Naruto:

> It was only a matter of time before one pressed the shutter resulting in a photo of ***herself***. ***She*** stared at herself with a new found appreciations. . . . ***She*** also, importantly, made relaxed eye contract with ***herself***. . . . ***She*** was certainly excited at her own appearance and seemed to know it was ***herself***.

(¶ 34 & Compl. Ex. 4 (emphasis added).) Similarly, PETA's own president, Ingrid Newkirk, has publicly referred to the subject of the Monkey Selfies as a "female" crested macaque. (Ex. 4.)

### D. The Lawsuit

On September 21, 2015, Next Friends PETA and Dr. Engelhardt filed this lawsuit on Naruto's behalf. PETA is an animal protection not-for-profit corporation based in Virginia. (¶ 18.) Dr. Engelhardt is a primatologist who claims to have studied the behavior of Sulawesi crested macaques. (¶¶ 19–20.) Neither claims to have been present when the Monkey Selfies were taken or to have any personal knowledge or interest in the subject matter of this suit. Nevertheless, PETA and Dr. Engelhardt have appointed themselves Naruto's representatives and seek by this "novel" lawsuit (¶ 5) to hold defendants liable for infringing Naruto's purported copyright in the Monkey Selfies based on allegations that Mr. Slater used Blurb's service to create and publish the Wildlife Book and thereafter sell it on Amazon.com. (¶¶ 35–38.)[2]

## III. LEGAL STANDARDS

### A. Dismissal for Lack of Standing (Rules 12(b)(1) and 12(b)(6))

Article III of the U.S. Constitution limits federal jurisdiction to actual cases or controversies. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102–03 (1998). "A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit." *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004). Article III standing addresses "whether the plaintiff is the proper party to bring the matter to the court," *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010), and must be shown for each claim and form of relief sought. *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008). To satisfy the Article III standing requirement, plaintiff bears the burden of showing that: (1) it has suffered a concrete injury-in-fact that is (2) fairly traceable to defendants' challenged conduct and (3) likely to be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

---

[2] The Complaint also alleges that Mr. Slater infringed Naruto's purported copyright by selling and distributing copies of the Monkey Selfies via his own website and a third party website, www.picanova.com. (¶ 39.)

Where the allegations in the complaint are insufficient on their face to demonstrate the injury-in-fact necessary to establish Article III standing, the court should dismiss the suit under Rule 12(b)(1). *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). In evaluating a facial standing challenge, the Court need not "accept as true conclusory allegations which are contradicted by documents referred to in the complaint" or "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

In addition to Article III standing, a plaintiff seeking redress for a statutory violation must establish statutory, or prudential, standing. *Cetacean*, 386 F.3d at 1175. Statutory standing exists only "when a particular plaintiff has been granted a right to sue by the specific statute under which he or she brings suit." *Id.* (citations and internal punctuation omitted). "If a plaintiff has suffered sufficient injury to satisfy the jurisdictional requirement of Article III but Congress has not granted statutory standing, that plaintiff cannot state a claim upon which relief can be granted," and dismissal is appropriate under Rule 12(b)(6). *Id.* (citing *Steel Co.*, 523 U.S. at 97).

### B. Dismissal for Failure to State a Claim (Rule 12(b)(6))

A complaint should be dismissed under Rule 12(b)(6) if it fails to allege facts sufficient to state a cognizable claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); Fed. R. Civ. P. 12(b)(6). "To avoid dismissal, the complaint must provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 875 (9th Cir. 2012) (citation omitted). A claim must be more than possible or conceivable; it must be "plausible." *Twombly*, 550 U.S. at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'") (citation omitted). The Court need not "accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010); *see also Iqbal*, 556 U.S. at 679 (conclusory allegations "are not entitled to the assumption of truth").

## IV. ARGUMENT

### A. The Complaint Should Be Dismissed for Lack of Article III Standing

To establish Article III standing, "there must be alleged (and ultimately proved) an 'injury in fact'—a harm suffered by the plaintiff that is 'concrete' and 'actual or imminent, not 'conjectural' or 'hypothetical.'" *Steel Co.*, 523 U.S. at 103 (citing *Lujan*, 504 U.S. at 560). Additionally, "there must be redressability—a likelihood that the requested relief will redress the alleged injury." *Id.* (citations omitted). The Complaint fails to establish either of these elements.

The injury alleged in this case is that Naruto has been denied the right to control the sale and distribution of the Monkey Selfies. (*See* ¶ 43 (alleging that "Defendants, in violation of Naruto's copyright, have displayed, advertised, reproduced, distributed, offered for sale, and sold copies of the Monkey Selfies").) But that alleged injury is entirely nonsensical when applied to a monkey. A monkey cannot arrange for public display of a photograph, advertise it for sale, have it reproduced, negotiate a license agreement, or sell it at a gallery, at auction or on the Internet, so exercise of those rights by others causes no injury whatsoever. As the Supreme Court has stated, "[s]tanding is not 'an ingenious academic exercise in the conceivable,'" *Lujan*, 504 U.S. at 566, but requires actual, concrete injury, which is plainly lacking here.

Also lacking is any likelihood that a favorable decision will redress Naruto's theoretical copyright injury. For instance, an injunction prohibiting publication and use of the Monkey Selfies by others (Compl., Prayer for Relief ¶ (b)) would confer no benefit on Naruto; what does a monkey care if its photograph is displayed or used or sold? Similarly, to the extent this lawsuit seeks monetary damages (*id.*, ¶¶ (c)–(e)), those funds would not go to Naruto to redress alleged copyright infringement. Rather, PETA and Dr. Engelhardt want to commercialize the photographs (without Naruto's knowledge or consent, which, as a monkey, he cannot give) and spend the proceeds as they see fit on, among other things, habitat preservation for the benefit of Naruto's "community" of crested macaques. (¶ 7; Prayer for Relief ¶ (f).) That is, Next Friends seek to redress a totally different problem—that of habitat loss and endangerment of crested macaques in Indonesia—through the ridiculous vehicle of a U.S. copyright claim.

In addition, the allegations in the Complaint make it far from clear that Naruto is even the "proper [monkey]" to be named in this suit. *Chandler*, 598 F.3d at 1122. The photographs were allegedly taken approximately four years ago (in or around 2011) in the Tangkoko Reserve of Indonesia (an area of approximately 33 square miles), where Naruto allegedly lives in a "community" of crested macaques. (¶ 31.) Naruto's "Next Friends" do not claim to have been present when the photographs were taken, and the Complaint contains no other allegations from which one could plausibly infer that Naruto is, in fact, the monkey in the photographs.

To the contrary, allegations in the Complaint make such an inference highly implausible. The Complaint alleges that Naruto is male. (¶ 14.) However, the Complaint repeatedly quotes the Wildlife Book in which Mr. Slater describes the monkey that used his camera as a "she." (¶ 34(e).) Indeed, PETA's own president, in attempting to publicize this suit, has described the subject monkey as a female. (Ex. 4.) The Court need not credit Plaintiffs' conclusory allegation that Naruto took the photographs where that allegation is contradicted by other facts alleged in the Complaint. *Warren*, 328 F.3d at 1139. And without any alleged basis to find that Naruto took the Monkey Selfies, there is certainly no basis to find that he suffered any injury giving rise to Article III standing. *See Lujan*, 504 U.S. at 563 ("[T]he 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself . . . injured.").

Notably, PETA has tried this sort of stunt before, and failed. In *Tilikum v. Sea World Parks & Entertainment, Inc.*, PETA filed a claim as the "Next Friend" of five Orcas living at Sea World Parks, asserting that they had been subjected to slavery in violation of the Thirteenth Amendment. 842 F. Supp. 2d 1259, 1264 (S.D. Cal. 2012). In dismissing the case under Rule 12(b)(1) for lack of Article III standing, the court reasoned that the practices of "'slavery' and 'involuntary servitude' are uniquely human activities," and, accordingly, that "there is simply no basis to construe the Thirteenth Amendment as applying to non-humans." *Id.*

The same is true here. Article I, Section 8 of the United States Constitution enumerates the powers afforded to Congress under the Constitution. One of those powers is "[t]o promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." U.S. Const., Art. I, § 8, Clause 8.

There is no basis to construe "authors" and "inventors" as applying to animals because they are incapable of exercising any rights in their works, they suffer no redressable injury when those works are used by humans, and providing animals exclusive rights they cannot exercise would hinder, rather than "promote[,] the progress of science and [the] useful arts." *Id.* Accordingly, the Constitution does not vest Congress with the authority to secure to animals copyright protection and, as discussed below, Congress has not done so.

### B. The Complaint Should Be Dismissed for Lack of Statutory Standing

The Complaint also fails to plead statutory standing. The Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*, confers no rights upon animals like Naruto. Accordingly, dismissal is appropriate under Rule 12(b)(6) for failure to state a claim. *Cetacean*, 386 F.3d at 1179.

On December 22, 2014, the Copyright Office issued its current Compendium of the U.S. Copyright Office Practices (the "Compendium"). Section 306, titled "The Human Authorship Requirement," provides that the Copyright Office "will register an original work of authorship, provided that the work was created by a human being." *Compendium of the U.S. Copyright Office Practices*, § 306 (3d ed. Dec. 22, 2014). The rationale is simple: "copyright law only protects 'the fruits of intellectual labor' that 'are founded in the creative powers of the mind.' [] Because copyright law is limited to 'original intellectual conceptions of the author,' the Office will refuse to register a claim if it determines that a human being did not create the work." *Id.* (citations omitted). Similarly, in a section titled "Works That Lack Human Authorship," the Compendium states that, "[t]o qualify as a work of 'authorship' a work must be created by a human being. Works that do not satisfy this requirement are not copyrightable." *Id.* § 313.2. The Compendium then goes on to say explicitly that "the Office will not register works produced by nature, ***animals***, or plants," and that unprotectable works include, for example, a "***photograph taken by a monkey***." *Id.* (emphasis added). In sum, the U.S. Copyright Office has weighed in on the exact issue before this Court and determined in no uncertain terms that the Monkey Selfies are not subject to protection under the Copyright Act.

The Ninth Circuit gives deference to the "expert opinion" of the Copyright Office. *See Garcia v. Google, Inc.*, 786 F.3d 733, 741 (9th Cir. 2015); *see also Inhale, Inc. v. Starbuzz*

*Tobacco, Inc.*, 755 F.3d 1038, 1041-42 (9th Cir. 2014) (finding the Compendium persuasive in determining that the shape of a glass container was not subject to copyright protection). As the Ninth Circuit explained in *Garcia*, the Copyright Office is "charged with administration and enforcement of the copyright laws and registration," and its "well-reasoned position reflects a 'body of experience and informed judgment to which courts and litigants may properly resort for guidance.'" 786 F.3d at 741-42 (citations omitted). Likewise here, there is no reason for the Court to depart from the Copyright Office's definitive determination that copyright protection does not extend to photographs taken by a monkey.

Dismissal of this suit for lack of statutory standing would be appropriate even if the Copyright Office had not weighed in so decisively against the instant claim. As the Ninth Circuit has explained, Congress must "make its intention clear before [courts] will construe a statute to confer standing on a particular plaintiff." *Cetacean*, 386 F.3d at 1175. No congressional intent to confer rights on animals is remotely evident in the Copyright Act. To the contrary, the plain language of the Copyright Act demonstrates that Congress intended to extend protection only to human beings.

Although the words "author" and "authorship" are not defined in the Copyright Act, the Act includes numerous references that mandate a human-only application. For example, 17 U.S.C. section 101 defines an author's "widow" or "widower" as the "author's surviving spouse under the law of the author's domicile at the time of his or her death, whether or not the spouse has later remarried." *Id.* Section 203(a)(2)(A) provides that, where an author is deceased, "[t]he widow or widower owns the author's entire termination interest unless there are any surviving children or grandchildren of the author, in which case the widow or widower owns one-half of the author's interest." By defining an author's rights by reference to "widows" and "grandchildren," the Copyright Act invokes concepts that are uniquely human in nature and have no conceivable application to animals, which do not marry, much less have rights to pass on property to a surviving spouse or heirs. Indeed, the enumerated rights afforded under 17 U.S.C. section 106— e.g., to reproduce the copyrighted work, to prepare derivative works, to distribute copies—are things only humans can do. Because the Copyright Act contains no evidence of congressional

intent to vest animals with copyright ownership much less a right to sue for infringement, Naruto lacks statutory standing and this suit should be dismissed.

The Ninth Circuit's decision in *Cetacean* is controlling and mandates dismissal of this case for lack of statutory standing. There, the "self-appointed attorney for all of the world's whales, porpoises, and dolphins" filed suit on behalf of these "cetaceans" for violation of, among other statutes, the Endangered Species Act and the Marine Mammal Protection Act. *Cetacean*, 386 F.3d at 1171-72. In reviewing the district court's order granting dismissal, the Ninth Circuit examined the language of each of these statutes to assess whether they evidenced congressional intent to confer standing on non-humans, and concluded that they did not. As the court summarized: "[i]f Congress . . . intended to take the extraordinary step of authorizing animals as well as people and legal entities to sue, they could, and should, have said so plainly." *Id.* at 1179 (citation omitted). Accordingly, the Ninth Circuit affirmed dismissal of the suit on the ground that the "Cetaceans do not have statutory standing to sue." *Id.* This Court should have no trouble reaching the same conclusion.

Finally, although it appears no court has expressly decided whether an animal can own a copyright (presumably because no party has attempted before now to bring such an inherently baseless claim), courts have repeatedly acknowledged that human authorship is a prerequisite to copyright protection. For instance, in *Burrow-Giles Lithographic Co. v. Sarony*, the Supreme Court described copyright as "the exclusive right of a ***man*** to the production of his own genius or intellect." 111 U.S. 53, 58 (1884) (emphasis added); *see also id.* at 61 ("photography is to be treated for purposes of the act as an art, and ***the author is the man*** who really represents, creates, or gives effect to the idea, fancy, or imagination"). Similarly, in *Urantia Foundation v. Maaherra*, 114 F.3d 955 (9th Cir. 1997), the Ninth Circuit found that a book allegedly inspired by the divine and "embody[ing] the words of celestial beings" (*id.* at 958), was nevertheless copyrightable "by the first *human beings* who compiled, selected, coordinated, and arranged the Urantia teachings." *Id.* (emphasis added). In light of these authorities, as well as the lack of congressional intent in the Copyright Act to confer standing on animals and the Copyright Office's definitive pronouncement that works created by animals are not protectable, the Court

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

10.

**BLURB INC.'S MOTION TO DISMISS COMPLAINT
CASE NO. 15-CV-04324 (WHO)**

should find as a matter of law that Naruto lacks statutory standing to sue for copyright infringement, and dismiss this suit with prejudice for failure to state a claim.[3]

### C. The Complaint Should Be Dismissed as to Blurb for Failure To State a Claim

To state a claim for copyright infringement, a plaintiff must allege that: (1) he owns a valid copyright in the allegedly infringed material; and (2) the alleged infringers have violated at least one exclusive right granted to copyright holders under 17 U.S.C. section 106. *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1159 (9th Cir. 2007).[4] The Complaint fails to plead either element.

First, Next Friends cannot establish that Naruto owns the copyright in the Monkey Selfies. Copyright ownership belongs to the "author" of the work. 17 U.S.C. § 201(a). As detailed above, because Naruto is an animal, he cannot be an author for copyright purposes, and thus, cannot establish the necessary copyright ownership to state a claim for infringement.

Second, the Complaint also fails to plead infringement by Blurb. To plead a claim for direct copyright infringement, a plaintiff must show "volitional conduct," that is, that "the defendant *directly caused* the infringement to take place." *Giganews,* 2013 WL 2109963, at *5–7. "[A] third party's infringing use of a defendant's automated systems does not render the defendant directly liable." *Rosen v. eBay, Inc.*, No. CV 13-6801 MWF, 2015 WL 1600081, at *6 (C.D. Cal. Jan. 16, 2015) (*citing Fox Broad. Co., Inc. v. Dish Network L.L.C.*, 747 F.3d 1060, 1067 (9th Cir. 2014)); *see also Giganews*, 2013 WL 2109963, at *7 (finding no direct infringement where defendants "simply programmed their servers to automatically copy, distribute, and display content, including infringing content, uploaded by . . . users").

Here, the Complaint merely alleges in conclusory fashion that defendants Slater and Blurb "published and sold for profit" the Wildlife Book (¶ 4), thereby violating Naruto's exclusive

---

[3] As Naruto lacks statutory standing, his Next Friends similarly lack standing to sue on his behalf. *See, e.g., Tilikum*, 842 F. Supp. 2d at 1264–65 (dismissing case brought by PETA and other Next Friends with prejudice because Thirteenth Amendment applies only to humans, not orcas).

[4] "These exclusive rights include the right to reproduce, distribute, publicly display, perform, or create derivative works of the copyrighted work." *Perfect 10, Inc. v. Giganews, Inc.*, No. CV11-07098-AHM (SHx), 2013 WL 2109963, at *5 (C.D. Cal. March 8, 2013).

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

11.

**BLURB INC.'S MOTION TO DISMISS COMPLAINT
CASE NO. 15-CV-04324 (WHO)**

rights to display, advertise, reproduce, distribute, offer for sale, and sell the Monkey Selfies (¶ 43). However, this conclusion is contradicted by judicially noticeable facts about the nature of Blurb's service. In particular, the Disclaimer on Blurb's website states in no uncertain terms that Blurb is not the publisher of books created using its software, that those who use its site "publish their own books," and that Blurb does not even review the user-generated content of is users' books. (Ex. 2; *see also* Ex. 3.) Accordingly, there are no well-pleaded factual allegations from which the Court could find that Blurb engaged in any volitional infringing conduct, even if a monkey could hold a copyright (which, of course, it cannot).[5]

## V. CONCLUSION

For the foregoing reasons, Blurb respectfully requests that the Court grant its Motion to Dismiss the Complaint in its entirety, with prejudice.

Dated: November 6, 2015

COOLEY LLP

By: /s/ Angela L. Dunning
    Angela L. Dunning

Attorneys for Defendant
BLURB, Inc.

122942993

---

[5] The Complaint alleges only direct infringement as to Blurb; not contributory infringement or vicarious liability for alleged infringement by Mr. Slater. (¶¶ 43–46.) To the extent Naruto's Next Friends seek to hold Blurb liable for Mr. Slater's alleged infringement, Blurb reserves all available defenses and arguments with respect to such claims.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

12.

**BLURB INC.'S MOTION TO DISMISS COMPLAINT
CASE NO. 15-CV-04324 (WHO)**