
COOLEY LLP
JESSICA VALENZUELA SANTAMARIA (220934) (jsantamaria@cooley.com)
ANGELA L. DUNNING (212047) (adunning@cooley.com)
JACQUELINE B. KORT (284370) (jkort@cooley.com)
3175 Hanover Street
Palo Alto, CA  94304-1130
Telephone:      (650) 843-5000
Facsimile:      (650) 849-7400

Attorneys for Defendant
BLURB, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NARUTO, a Crested Macaque, by and through his Next Friends, PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC., and ANTJE ENGELHARDT, Ph.D., <br><br> Plaintiffs, <br><br> v. <br><br> DAVID JOHN SLATER, an individual, BLURB, INC., a Delaware corporation, and WILDLIFE PERSONALITIES, LTD., a United Kingdom private limited company, <br><br> Defendants. | Case No.  15-cv-04324 (WHO) <br><br> **REPLY IN SUPPORT OF BLURB, INC.'S MOTION TO DISMISS THE COMPLAINT FOR COPYRIGHT INFRINGEMENT** <br><br> Date:         January 6, 2016 <br> Time:        2:00 p.m. <br> Courtroom: 2, 17th Floor <br> Judge:       Hon. William H. Orrick <br> Trial Date:  Not Yet Set <br><br> **COMPLAINT FILED:  SEPTEMBER 21, 2015** |

# TABLE OF CONTENTS

**PAGE**

I. INTRODUCTION ..................................................................................................................1

II. THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF STATUTORY STANDING ............................................................................................................................1

    A. The Copyright Act Contains No Explicit Grant of Standing To Animals, as Required by Cetacean ..............................................................................................1

    B. Animals Are Not "Authors" Under the Copyright Act............................................2

    C. Next Friends' Policy Arguments Are Unavailing.....................................................5

III. CONCLUSION......................................................................................................................6

# TABLE OF AUTHORITIES

**PAGE**

**Cases**

*Aalmuhammed v. Lee*,
   202 F.3d 1227 (9th Cir. 2000)..................................................................................................3

*Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*,
   397 U.S. 150 (1970)..................................................................................................................1

*Batjac Prods., Inc. v. GoodTimes Home Video Corp.*,
   160 F.3d 1223 (9th Cir. 1998)..................................................................................................5

*Burrow-Giles Lithographic Co. v. Sarony*,
   111 U.S. 53 (1884)................................................................................................................3, 4

*Burwell v. Hobby Lobby Stores, Inc.*,
   134 S. Ct. 2751 (2014) .............................................................................................................4

*Cetacean Community v. Bush*,
   386 F.3d 1169 (9th Cir. 2004)..............................................................................................1, 2

*Citizens United v. Fed. Election Comm'n*,
   558 U.S. 310 (2010)..................................................................................................................3

*Cmty. for Creative Non-Violence v. Reid*,
   490 U.S. 730 (1989)..................................................................................................................3

*Garcia v. Google, Inc.*,
   786 F.3d 733 (9th Cir. 2015)....................................................................................................5

*Harper & Row Publishers, Inc. v. Nation Enters.*,
   471 U.S. 539 (1985)..................................................................................................................5

*Inhale, Inc. v. Starbuzz Tobacco, Inc.*,
   755 F.3d 1038 (9th Cir. 2014), *cert. denied*, 135 S. Ct. 758 (2014) ........................................5

*Kelley v. Chicago Park Dist.*,
   635 F.3d 290 (7th Cir. 2011)................................................................................................3, 4

*Nat'l Credit Union Admin. v. First Nat'l Bank & Tr. Co.*,
   522 U.S. 479 (1998)..................................................................................................................1

*Pembina Consolidated Silver Mining & Milling Co. v. Pennsylvania*,
   125 U.S. 181 (1888)..................................................................................................................3

*Sony Corp. of Am. v. Universal City Studios*,
   464 U.S. 417 (1984)..................................................................................................................5

# TABLE OF AUTHORITIES
## (CONTINUED)

**PAGE**

*Tilikum v. Sea World Parks & Entm't, Inc.*,
 842 F. Supp. 2d 1259 (S.D. Cal. 2012) ............................................................................................1

*U.S. v. Paramount Pictures*,
 334 U.S. 131 (1948) ..........................................................................................................................5

*Urantia Found. v. Maaherra*,
 114 F.3d 955 (9th Cir. 1997) ............................................................................................................4

**Statutes**

1 U.S.C.
 § 1 ......................................................................................................................................................4

17 U.S.C.
 § 101 ..................................................................................................................................................4
 § 102(a) .............................................................................................................................................6
 § 105 ..................................................................................................................................................6
 § 302(c) .............................................................................................................................................4

Copyright Act ........................................................................................................................... *passim*

**Other Authorities**

37 C.F.R. § 202.1(e) ................................................................................................................................6

2 William F. Patry, *Patry on Copyright* § 3:19 (2010) ..........................................................................3

Law of the Republic of Indonesia, No. 19, *Copyright*, Art. 1 § 2 (2002) ..............................................5

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

ii.

**BLURB INC.'S MOTION TO DISMISS COMPLAINT**
**CASE NO. 15-CV-04324 (WHO)**

## I. INTRODUCTION

The opposition filed by Naruto's Next Friends fails to address the fundamental defect necessitating dismissal of this suit. In *Cetacean Community v. Bush*, the Ninth Circuit held definitively that animals do not have standing to enforce a statute absent "a clear direction from Congress" in the statute, itself. 386 F.3d 1169, 1178 (9th Cir. 2004). The Copyright Act contains no clear grant of standing to animals, and Next Friends do not and cannot argue otherwise. Accordingly, Naruto lacks statutory standing to assert a claim under the Copyright Act, and this suit should be dismissed with prejudice.

## II. THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF STATUTORY STANDING

### A. The Copyright Act Contains No Explicit Grant of Standing To Animals, as Required by *Cetacean*

As the Supreme Court has repeatedly recognized, Congress must "make its intention clear before [courts] will construe a statute to confer standing on a particular plaintiff." *Id.* at 1175 (citing *Nat'l Credit Union Admin. v. First Nat'l Bank & Tr. Co.*, 522 U.S. 479, 488 (1998); *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153 (1970)). This is especially so in the highly unusual circumstance where the would-be plaintiff is not a person or legal entity, but an animal. As the Ninth Circuit explained in *Cetacean*, "[i]f Congress and the President intended to take the extraordinary step of authorizing animals as well as people and legal entities to sue, they could, and should, [say] so plainly." 386 F.3d at 1179. Absent such a statement of intent in the statute, the court is bound to conclude that animals "do not have statutory standing to sue." *Id.* (dismissing claims brought by ocean mammals under statutes enacted for their protection on ground that the statutes did not contain an explicit grant of standing to animals); *see also Tilikum v. Sea World Parks & Entm't, Inc.*, 842 F. Supp. 2d 1259, 1264–65 (S.D. Cal. 2012) (rejecting PETA's "Next Friend" Thirteenth Amendment claim on behalf of five Orcas living at Sea World Parks for lack of Article III and statutory standing).

Next Friends acknowledge that Naruto's "standing depends on whether the statute under which the case is brought gives animals standing." (Opp. at 7:24-26.) But rather than arguing that the Copyright Act demonstrates clear Congressional intent to confer such standing—a test

they cannot satisfy—Next Friends argue that "[i]f Congress wanted to *exclude* non-human authorship rights, it knew how to do so . . . ." (Opp. at 9:15-16 (emphasis added).) That is, Next Friends assert that Naruto has standing because the Copyright Act does not say otherwise. This argument directly contravenes *Cetacean* and turns the standing inquiry on its head. The question is not whether the Copyright Act expressly denies animals a right of action, but whether it expressly grants them one. *Cetacean*, 386 F.3d at 1179. The Copyright Act does not even mention animals, much less explicitly grant them standing to sue. Accordingly, Naruto lacks standing to assert a claim under the Copyright Act, and this suit must be dismissed with prejudice.

Undeterred, Next Friends attempt to sidestep *Cetacean* by arguing that it is distinguishable on its facts. In particular, Next Friends assert that the statutes at issue in *Cetacean* "explicitly limited the definition of a 'person' with standing to only include 'an individual partnership, corporation, association, or public or private organization other than an agency,'" whereas the Copyright Act does not define "author" or otherwise exclude animals from its definition. (Opp. at 7:22–8:5.) This argument is unavailing. Contrary to Next Friends' assertion, two of the three statutes under which the *Cetacean* plaintiffs filed suit—the Marine Mammal Protection Act ("MMPA") and National Environmental Policy Act ("NEPA")—did not contain any provision explicitly defining or delimiting persons entitled to sue. The MMPA prohibited the taking of a marine mammal without a permit and granted standing broadly to any "'party' opposed to such a permit." *Cetacean*, 386 F.3d at 1178. Similarly, "no provision of NEPA explicitly grant[ed] any person or entity standing to enforce the statute" or otherwise withheld standing from animals. *Id.* at 1179. Nevertheless, the Ninth Circuit affirmed dismissal as those statutes did not explicitly confer standing upon animals. *Id.* at 1178–79. *Cetacean* compels the same result here.

**B.     Animals Are Not "Authors" Under the Copyright Act**

Unable to satisfy *Cetacean's* statutory standing test, Next Friends advance a number of sideshow arguments in the hope of deflecting the Court's attention from the central, dispositive standing defect. Principal among these is that the text of the Copyright Act should be interpreted broadly to permit animals-as-authors. (*See, e.g.*, Opp. at 1:19–20 (arguing that the Copyright Act "does not compel the conclusion that authorship may be vested exclusively in humans." (Opp. at

1:19–20.) This argument is irrelevant to the standing inquiry and, in any event, finds no support in the law.

Next Friends do not cite a single authority for the proposition that animals can or should be considered authors for purposes of the Copyright Act. To the contrary, Next Friends' Opposition cites a number of cases noting that copyright protections are intended solely for "persons." (*See, e.g.*, Opp. at 6 (citing *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989) ("As a general rule, the author is the party who actually creates the work, that is the *person* who translates an idea in a fixed, tangible expression entitled to copyright protection) (emphasis added); *Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 61 (1884) (noting that the author of a photograph is the *person* who takes the photo); *Aalmuhammed v. Lee*, 202 F.3d 1227, 1232 (9th Cir. 2000) (same).) This long-standing body of case law was recently reaffirmed by the Seventh Circuit, which held that "[a]uthors of copyrightable works must be *human*; works owning their form to the forces of nature cannot be copyrighted." *Kelley v. Chicago Park Dist.*, 635 F.3d 290, 304 (7th Cir. 2011) (emphasis added) (rejecting the copyrightability of a wildflower display because "authorship is an entirely human endeavor," "the law must have some limits," and "not all [ ] art may be copyrighted") (citing 2 William F. Patry, *Patry on Copyright* § 3:19 (2010).)

In place of authority for their admittedly novel animals-as-authors theory, Next Friends resort to mischaracterizing the Copyright Act, claiming that it "expressly provides that not all authors will be human." (Opp. at 8:15.) More specifically, because a work created by an employee vests initially with the employer, and because employers can be corporations or other entities, Next Friends contend the Copyright Act contemplates protection for non-human authors such as animals. This argument is specious. The Supreme Court has repeatedly and routinely interpreted corporations and other legal entities to be "persons" under the law. *See, e.g.*, *Pembina Consolidated Silver Mining & Milling Co. v. Pennsylvania*, 125 U.S. 181, 189 (1888) ("Under the designation of 'person' there is no doubt that a private corporation is included [in the Fourteenth Amendment]. Such corporations are merely associations of individuals . . . ."); *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 341–42 (2010) (finding that corporations—associations of

persons—have speech rights under the First Amendment); *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2768 (2014) (finding word "person" in federal legislation includes corporations and companies, as well as individuals, and so the plaintiff corporation was a person under the Religious Freedom Restoration Act of 1993); *see also* 1 U.S.C. § 1 ("In determining the meaning of any Act of Congress, unless the context indicates otherwise . . . the words 'person' and 'whoever' include corporations, companies, [and] associations . . . as well as individuals"). The same cannot be said for animals. Animals are not persons, and Next Friends cite no authority for that proposition.

Next Friends also point to provisions in the Copyright Act relating to "anonymous works," but those provisions undermine, rather than support, their position. (Opp. at 9:1-8 (citing 17 U.S.C. §§ 101, 302(c)).) As Next Friends concede, anonymous works are those for which "*no natural person* is identified as author." (Opp. at 9:2-3 (citing 17 U.S.C. § 101) (emphasis added).) In other words, the definition contemplates a *natural person* as author, who happens to be unidentified. The provision lends no support whatsoever for the idea that an animal (identified or otherwise) can be an author entitled to copyright protection.

Plaintiff's argument that the copyright law has been one of "gradual expansion in the *types of works* accorded protections" is also unavailing. (Opp. at 9:20-21 (citation omitted) (emphasis added).) It is certainly true that copyright law has evolved to provide protection to new types of works. *See, e.g.*, *Burrow-Giles Lithographic*, 111 U.S. at 61 (holding that a photograph is a protectable "writing" for purposes of the Copyright Act). But neither the courts nor Congress nor the Copyright Office have expanded who may be considered *authors* of copyright-protected works,[1] much less endorsed Next Friends' unsupported proposition that animals may be authors. To the contrary, in *Urantia Found. v. Maaherra*, 114 F.3d 955, 958 (9th Cir. 1997), the Ninth Circuit held that "some element of *human* creativity must have occurred in order for the [work in question] to by copyrightable." 114 F.3d at 958 (emphasis added). Similarly, in *Kelley*, 635 F.3d

---

[1] Next Friends assert that the Supreme Court has interpreted the term "author" broadly. (Opp. at 10:22-23.) However, the single case they cite for this proposition, *Burrow-Giles Lithographic*, interpreted only the term "writing," not "author." 111 U.S. at 61.

at 303-04, the Seventh Circuit found that authorship is one of the "*explicit* constitutional requirements" for copyright protection and that a garden display designed by a prominent artist was not copyrightable as it was not "authored" or "fixed" as required by the Copyright Act). And in its Compendium of U.S. Copyright Office Practices, Third Edition (Dec. 22, 2014) (available at http://copyright.gov/comp3/chap300/ch300-copyrightable-authorship.pdf) ("Compendium"), the Copyright Office explicitly concluded that the Copyright Act requires "human authorship" and that works created by animals, including "*a photograph taken by a monkey*," are not copyrightable. Compendium §§ 302, 306, 313.2 (emphasis added).[2] Thus, Naruto is not an "author" under the Copyright Act, and he cannot sue for violation of that statute.[3]

### C.   Next Friends' Policy Arguments Are Unavailing

Running throughout Next Friends' Opposition is a baseless policy argument, namely, that affording Naruto a copyright in the Monkey Selfies and standing to sue for its violation would further the purposes of the Copyright Act by promoting the arts. (*See* Opp. at 10 (citing Const. Art. 1, Sec. 8); *see also* Opp. at 11 (citing *Sony Corp. of Am. v. Universal City Studios*, 464 U.S. 417, 429 (1984) (holding that the purpose of the Copyright Act is to protect the "general benefits derived by the public from the labors of authors"); *U.S. v. Paramount Pictures*, 334 U.S. 131, 158 (1948) (explaining that copyright protection is granted "to induce release to the public of the products of [the author's] creative genius"); *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 546 (1985) ("The monopoly created by copyright thus rewards the individual

---

[2] Contrary to Next Friends' assertion (Opp. at 15–17), Chapter 300 of the Compendium, entitled "Copyrightable Authorship: What Can Be Registered," contains an exhaustive discussion of the authorship requirement and is entitled to substantial deference. *See, e.g.*, *Inhale, Inc. v. Starbuzz Tobacco, Inc.*, 755 F.3d 1038, 1041–42 & n.2 (9th Cir. 2014), *cert. denied*, 135 S. Ct. 758 (2014) (affording deference to the Compendium and opinion letters of Copyright Office); *Garcia v. Google, Inc.*, 786 F.3d 733, 741 (9th Cir. 2015) (same); *Batjac Prods., Inc. v. GoodTimes Home Video Corp.,* 160 F.3d 1223, 1230–31 (9th Cir. 1998) (deferring to the Compendium).

[3] The fact that the Monkey Selfies are a "foreign work" (Opp. at 14:14-16), is irrelevant to the analysis. Indeed, even under the laws of Indonesia, where Naruto allegedly took the photographs in question, authorship is defined in exclusively human terms. *See* Law of the Republic of Indonesia, No. 19, *Copyright*, Art. 1 § 2 (2002) ("Author shall mean a *person or several persons* jointly upon whose inspiration a Work is produced, based on the intellectual ability, imagination, dexterity, skill or expertise manifested in a distinctive form and is of a personal nature.") (emphasis added).

author in order to benefit the public.").) Next Friends even go so far as to assert that "leaving the [Monkey Selfies] in the public domain . . . is fundamentally at odds with the Copyright Act." (Opp. at 12:15-16.) But the Copyright Act intentionally leaves many works in the public domain. *See, e.g.*, Compendium, § 305 (discussing the requirement under 17 U.S.C. § 102(a) that works be "fixed in any tangible medium of expression" and noting that "some works of authorship may not satisfy the fixation requirement, such as an improvisational speech, sketch, dance, or other performance that is not recorded"); 17 U.S.C. § 105 (works created by the U.S. Government are not copyrightable); 37 C.F.R. § 202.1(e) (typefaces and fonts are not copyrightable). Moreover, the notion that granting copyright protection to monkeys would promote the arts or induce the creation or release of works to the public is ludicrous on its face. Just as flowers grow without the assurance of copyright protection, monkeys will push buttons on cameras left out for them whether the Copyright Act affords them protection or not. Indeed, granting animals copyrights would contravene, rather than promote, the purposes of the Copyright Act by making it unlawful for people to reproduce or distribute or display works like the Monkey Selfies. Only by leaving such works in the public domain—as the Copyright Act requires—is there any assurance that works created by animals may be seen and enjoyed by the public.

### III. CONCLUSION

For the foregoing reasons and those set forth in its opening brief, Blurb respectfully requests that the Court grant its Motion to Dismiss the Complaint in its entirety, with prejudice.

Dated: December 18, 2015                COOLEY LLP


                                        By:   */s/ Angela L. Dunning*
                                              Angela L. Dunning

                                        Attorneys for Defendant
                                        BLURB, Inc.

125007727