UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NARUTO, et al., <br><br>　　　　Plaintiffs, <br><br>　　v. <br><br>DAVID JOHN SLATER, et al., <br><br>　　　　Defendants. | Case No. 15-cv-04324-WHO <br><br>**ORDER GRANTING MOTIONS TO DISMISS** <br><br>Re: Dkt. Nos. 24, 28 |

## INTRODUCTION

This case arises out of allegations that Naruto, a six-year-old crested macaque, took multiple photographs of himself (the "Monkey Selfies") using defendant David John Slater's camera. The complaint, filed by the People for the Ethical Treatment of Animals ("PETA") and Antje Engelhardt as "Next Friends," alleges that defendants Slater, Blurb, Inc. (the "publisher" of a book by Slater containing the Monkey Selfies), and Wildlife Personalities, Ltd. (a United Kingdom company that, along with Slater, "falsely" claims authorship of the Monkey Selfies) violated Naruto's copyright by displaying, advertising, and selling copies of the Monkey Selfies. On January 6, 2016, I heard argument on the defendants' motions to dismiss that assert that Naruto does not have standing and cannot state a claim under the Copyright Act. Because the Copyright Act does not confer standing upon animals like Naruto, defendants' motions to dismiss are GRANTED.[1]

---

[1] Blurb and Next Friends request judicial notice of exhibits containing content from internet webpages. Dkt. Nos. 26, 33. Because I do not rely on these materials in granting defendants' motions, and even if I had it would not change my analysis, the requests are DENIED as moot.

**BACKGROUND**

I accept the allegations in the complaint as true for purposes of the motions to dismiss. Naruto is a six-year old crested macaque who lives in a reserve on the island of Sulawesi, Indonesia. Compl. ¶ 14 [Dkt. No. 1]. He is "highly intelligent" and possesses "grasping hands and opposable thumbs with the ability to move his fingers independently." *Id*. ¶¶ 25, 27. Because the reservation where he lives is immediately adjacent to a human village, Naruto has encountered tourists and photographers throughout his life. *Id*. ¶¶ 28, 29. He was "accustomed to seeing cameras, observing cameras being handled by humans, hearing camera mechanisms being operated, and experienced cameras being used by humans without danger or harm to him and his community." *Id*. at ¶ 30. "On information and belief, Naruto authored the Monkey Selfies sometime in or around 2011" by "independent, autonomous action" in examining and manipulating Slater's unattended camera and "purposely pushing" the shutter release multiple times, "understanding the cause-and-effect relationship between pressing the shutter release, the noise of the shutter, and the change to his reflection in the camera lens." *Id*. ¶¶ 31, 33.

The Next Friends allege that Slater has repeatedly infringed on Naruto's copyright on the Monkey Selfies by "falsely claiming to be the photographs' authors and by selling copies of the images" for profit. *Id*. ¶35. They claim that defendants have violated sections 106 and 501 of the Copyright Act of 1976, by displaying, advertising, reproducing, distributing, offering for sale, and selling copies of the Monkey Selfies. *Id*. ¶¶ 43, 44. They allege that Naruto is entitled to defendants' profits from the infringement and seek to permanently enjoin defendants from copying, licensing, or "otherwise exploiting" the Monkey Selfies and to permit Next Friends to "administer and protect" Naruto's authorship of and copyright in the Monkey Selfies. *Id*. at p. 9-10.

**LEGAL STANDARD**

To survive a motion under either Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for

the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

**DISCUSSION**

Defendants argue the complaint should be dismissed for lack of standing under Article III and the Copyright Act of 1976. Slater Mot. at 2-3 [Dkt. No. 28]; Blurb Mot. at 4-5 [Dkt. No. 24]. To demonstrate standing under Article III's case or controversy requirement, a plaintiff must show that: (i) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (ii) the injury is "fairly traceable" to the challenged action of the defendants; and (iii) a favorable decision will be likely to redress the injury. *Friends of the Earth, Inc. v. Laidlaw Env't Services (TOC), Inc.*, 528 U.S. 167, 180-81 (2000); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The Ninth Circuit has stated that Article III "does not compel the conclusion that a statutorily authorized suit in the name of an animal is not a 'case or controversy.'" *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1175 (9th Cir. 2004). I need not discuss Article III standing further, because regardless of whether Naruto fulfills the requirements of Article III, he must demonstrate standing under the Copyright Act for his claim to survive under Rule 12(b)(6).

A plaintiff seeking redress for a statutory violation must establish statutory standing. *Cetacean*, 386 F.3d at 1175; *Warth v. Seldin*, 422 U.S. 490, 500 (1975). "If a plaintiff has

3

suffered sufficient injury to satisfy the jurisdictional requirement of Article III but Congress has not granted statutory standing, that plaintiff cannot state a claim upon which relief can be granted," and dismissal is appropriate. *Cetacean*, 386 F.3d at 1175. Statutory standing exists "when a particular plaintiff has been granted a right to sue by the specific statute under which he or she brings suit." *Id.* (internal citations and quotation marks omitted). Congress must "make its intentions clear before [the courts] will construe a statute to confer standing on a particular plaintiff." *Id.*

"[T]he starting point for interpreting a statute is the language of the statute itself." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980). The Copyright Act protects "original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." 17 U.S.C. § 102(a). The "fixing" of the work in the tangible medium of expression must be done "by or under the authority of the author." 17 U.S.C. § 101. The Copyright Act defines neither "works of authorship" nor "author." The Ninth Circuit has observed that the Act "purposefully left 'works of authorship' undefined to provide for some flexibility." *Garcia v. Google, Inc.*, 786 F.3d 733, 741 (9th Cir. 2015).

Defendants argue that the Copyright Act confers no rights upon animals such as Naruto. Next Friends respond that the Act has "no definitional limitation." Opp. at 8 [Dkt. No. 31]. They contend that standing under the Copyright Act is available to anyone, including an animal, who creates an "original work of authorship." *Id.* at 5. They argue that they have sufficiently alleged that Naruto is the author of the Monkey Selfies and are not required to allege "anything else" to demonstrate his standing. *Id.* at 7.

I disagree with Next Friends and follow the rationale of *Cetacean*. In that case, the Cetacean Community (the "Cetaceans"), created by the "self-appointed attorney for all of the world's whales, porpoises, and dolphins," filed suit on behalf of the Cetaceans for violations of the Endangered Species Act, the Marine Mammal Protection Act, and the National Environmental Policy Act. 386 F.3d at 1171-72. Reviewing the district court's order granting dismissal, the

4

Ninth Circuit examined the language of each statute to assess whether it evidenced congressional intent to confer standing on animals. None did. The court held that "if Congress and the President intended to take the extraordinary step of authorizing animals as well as people and legal entities to sue, they could, and should, have said so plainly." *Id*. at 1179 (internal quotation marks, citations, and modifications omitted).[2]

Here, the Copyright Act does not "plainly" extend the concept of authorship or statutory standing to animals. To the contrary, there is no mention of animals anywhere in the Act. The Supreme Court and Ninth Circuit have repeatedly referred to "persons" or "human beings" when analyzing authorship under the Act. *See, e.g., Aalmuhammed v. Lee*, 202 F.3d 1227, 1234 (9th Cir. 2000) ("[A]n author superintends the work by exercising control. This will likely be a *person* who has actually formed the picture by putting the persons in position, and arranging the place where the people are to be.") (internal quotation marks, citations and modifications omitted) (emphasis added); *Urantia Foundation v. Maaherra*, 114 F.3d 955, 958 (9th Cir. 1997) ("For copyright purposes, however, a work is copyrightable if copyrightability is claimed by the first *human beings* who compiled, selected, coordinated, and arranged [the work].") (emphasis added); *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989) ("As a general rule, the author is the party who actually creates the work, that is the *person* who translates an idea in a fixed, tangible expression entitled to copyright protection.") (emphasis added). Despite Next Friends' assertion that declining to grant a monkey copyright to a photograph "would depart from well-established norms," Next Friends have not cited, and I have not found, a single case that expands the definition of authors to include animals. Opp. at 15.

Moreover, the Copyright Office agrees that works created by animals are not entitled to copyright protection. It directly addressed the issue of human authorship in the Compendium of

---

[2] Similarly, in *Tilikum ex rel. People for the Ethical Treatment of Animals, Inc. v. Sea World Parks & Entm't, Inc*., 842 F. Supp. 2d 1259, 1260-61 (S.D. Cal. 2012), PETA, acting as next friends for five orcas, brought an action against Sea World alleging that the orcas were being held in violation of the Thirteenth Amendment. Dismissing the case for lack of federal jurisdiction, the court held that the amendment's language was "clear, concise, and not subject to the vagaries of conceptual interpretation" and as such "there is simply no basis to construe the Thirteenth Amendment as applying to non-humans." *Id.* at 1264.

U.S. Copyright Office Practices issued in December 2014 (the "Compendium"). "When interpreting the Copyright Act, [the courts] defer to the Copyright Office's interpretations in the appropriate circumstances." *Inhale, Inc. v. Starbuzz Tobacco, Inc.*, 755 F.3d 1038, 1041 (9th Cir. 2014); *see also Garcia*, 786 F.3d at 741-42 (describing an expert opinion by the Copyright Office as reflecting a "body of experience and informed judgment to which courts and litigants may properly resort for guidance") (internal quotation marks and citations omitted). In section 306 of the Compendium, entitled "The Human Authorship Requirement," the Copyright Office relies on citations from *Trade-Mark Cases*, 101 U.S. 94 (1879) and *Burrow-Giles* to conclude that it "will register an original work of authorship, provided that the work was created by a human being." *Compendium of the U.S. Copyright Office Practices* § 306 (3d ed.). Similarly, in a section titled "Works That Lack Human Authorship," the Compendium states that, "[t]o qualify as a work of 'authorship' a work must be created by a human being. Works that do not satisfy this requirement are not copyrightable." *Id.* at § 313.2 (internal citations omitted). Specifically, the Copyright Office will not register works produced by "nature, animals, or plants" including, by specific example, a "photograph taken by a monkey." *Id.* [3]

Naruto is not an "author" within the meaning of the Copyright Act. Next Friends argue that this result is "antithetical" to the "tremendous [public] interest in animal art." Opp. at 12. Perhaps. But that is an argument that should be made to Congress and the President, not to me. The issue for me is whether Next Friends have demonstrated that the Copyright Act confers standing upon Naruto. In light of the plain language of the Copyright Act, past judicial interpretations of the Act's authorship requirement, and guidance from the Copyright Office, they have not.

---

[3] Next Friends argue that the opinion expressed in the Compendium should not apply, in part, because the Monkey Selfies are foreign created works and thus are not required to be registered. Opp. at 21. However, regardless of whether these particular photographs require registration, the Compendium provides guidance regarding the core, disputed question – whether authorship under the Copyright Act contemplates works created by animals. Therefore, I rely on the Compendium as an additional basis for my analysis to the extent that its interpretation has the "power to persuade." *Inhale, Inc.*, 755 F.3d at 1042.

## CONCLUSION

Defendants' motions to dismiss are GRANTED.  Any amended complaint should be filed within 20 days of this Order.

**IT IS SO ORDERED**.

Dated: January 28, 2016



WILLIAM H. ORRICK
United States District Judge