**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| NARUTO, a Crested Macaque, by and through his Next Friends, People for the Ethical Treatment of Animals, Inc., | No. 16-15469 |
| *Plaintiff-Appellant*, | D.C. No. 3:15-cv-04324-WHO |
| v. | |
| DAVID JOHN SLATER; BLURB, INC., a Delaware corporation; WILDLIFE PERSONALITIES, LTD., a United Kingdom private limited company, | OPINION |
| *Defendants-Appellees.* | |

Appeal from the United States District Court
for the Northern District of California
William Horsley Orrick, District Judge, Presiding

Argued and Submitted July 12, 2017
San Francisco, California

Filed April 23, 2018

Before: Carlos T. Bea and N. Randy Smith, Circuit Judges,
and Eduardo C. Robreno,* District Judge.

---

* The Honorable Eduardo C. Robreno, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

Opinion by Judge Bea;
Concurrence by Judge N.R. Smith

### SUMMARY[**]

**Copyright / Standing**

Affirming the district court's dismissal of claims brought by a monkey, the panel held that the animal had constitutional standing but lacked statutory standing to claim copyright infringement of photographs known as the "Monkey Selfies."

The panel held that the complaint included facts sufficient to establish Article III standing because it alleged that the monkey was the author and owner of the photographs and had suffered concrete and particularized economic harms. The panel concluded that the monkey's Article III standing was not dependent on the sufficiency of People for the Ethical Treatment of Animals, Inc., as a guardian or "next friend."

The panel held that the monkey lacked statutory standing because the Copyright Act does not expressly authorize animals to file copyright infringement suits.

The panel granted appellees' request for an award of attorneys' fees on appeal.

Concurring in part, Judge N.R. Smith wrote that the appeal should be dismissed and the district court's judgment

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

on the merits should be vacated because the federal courts lacked jurisdiction to hear the case. Disagreeing with the majority's conclusion that next-friend standing is nonjurisdictional, Judge Smith wrote that PETA's failure to meet the requirements for next-friend standing removed jurisdiction of the court.

## COUNSEL

David A. Schwarz (argued), Irell & Manella LLP, Los Angeles, California, for Plaintiff-Appellant.

Andrew J. Dhuey (argued), Berkeley, California, for Defendants-Appellees David John Slater and Wildlife Personalities, Ltd.

Angela Dunning (argued), Jacqueline B. Kort, Kyle C. Wong, Jessica Valenzuela Santamaria, Cooley LLP, Palo Alto, California, for Defendant-Appellee Blurb, Inc.

Justin Marceau, Denver, Colorado; Corey Page, San Francisco, California; for Amicus Curiae Agustin Fuentes.

## OPINION

BEA, Circuit Judge:

We must determine whether a monkey may sue humans, corporations, and companies for damages and injunctive relief arising from claims of copyright infringement. Our court's precedent requires us to conclude that the monkey's claim has standing under Article III of the United States Constitution. Nonetheless, we conclude that this monkey—and all animals, since they are not human—lacks statutory standing under the Copyright Act.[1] We therefore affirm the judgment of the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

Naruto was a seven-year-old crested macaque that lived—and may still live—in a reserve on the island of Sulawesi, Indonesia. In 2011, a wildlife photographer, David Slater, left his camera unattended in the reserve. Naruto allegedly took several photographs of himself (the "Monkey Selfies") with Slater's camera.

Slater and Wildlife Personalities, Ltd., ("Wildlife") published the Monkey Selfies in a book that Slater created through Blurb, Inc.'s ("Blurb") website in December 2014. The book identifies Slater and Wildlife as the copyright owners of the Monkey Selfies. However, Slater admits throughout the book that Naruto took the photographs at issue. For example, the book describes one of the Monkey Selfies as follows: "Sulawesi crested black macaque smiles at itself while pressing the shutter button on a camera."

---

[1] 17 U.S.C. § 101 *et seq.*

Another excerpt from the book describes Naruto as "[p]osing to take its own photograph, unworried by its own reflection, smiling. Surely a sign of self-awareness?"

In 2015 People for the Ethical Treatment of Animals ("PETA") and Dr. Antje Engelhardt filed a complaint for copyright infringement against Slater, Wildlife, and Blurb, as Next Friends on behalf of Naruto. The complaint alleges that Dr. Engelhardt has studied the crested macaques in Sulawesi, Indonesia for over a decade and has known, monitored, and studied Naruto since his birth. The complaint does not allege any history or relationship between PETA and Naruto.[2] Instead, the complaint alleges that PETA is "the largest animal rights organization in the world" and "has championed establishing the rights and legal protections available to animals beyond their utility to human beings . . . ."

Slater, Wildlife, and Blurb filed motions to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) on the grounds that the complaint did not state facts sufficient to establish standing under Article III or statutory standing under the Copyright Act. The district court granted the motions to dismiss. In its order the district court stated the following with respect to Article III standing:

> The Ninth Circuit has stated that Article III "does not compel the conclusion that a

---

[2] At oral argument Appellant's counsel suggested that, upon remand, the complaint could be amended to state a significant relationship between PETA and Naruto. However, PETA and Engelhardt agreed not to seek amendment of the complaint, no doubt to procure our earlier hearing their appeal. Having procured the benefit of the bargain, we will hold them to their contract.

statutorily authorized suit in the name of an animal is not a 'case or controversy.'" *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1175 (9th Cir. 2004). I need not discuss Article III standing further, because regardless of whether Naruto fulfills the requirements of Article III, he must demonstrate standing under the Copyright Act for his claim to survive under Rule 12(b)(6).

We are, of course, bound by the precedent set in *Cetacean Community* until and unless overruled by an en banc panel or the Supreme Court. *Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003) (en banc).

The district court concluded that Naruto failed to establish statutory standing under the Copyright Act. PETA and Dr. Engelhardt timely appealed on Naruto's behalf. However, after the appeal was filed, and with the permission of Appellees, Dr. Engelhardt withdrew from the litigation. Therefore, on appeal, only PETA remains to represent Naruto as his "next friend."

## STANDARD OF REVIEW

This court reviews *de novo* dismissals under Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6). *See Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1156 (9th Cir. 2007). "All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

## DISCUSSION

### I.  Next Friend Standing

We gravely doubt that PETA can validly assert "next friend" status to represent claims made for the monkey both (1) because PETA has failed to allege any facts to establish the required significant relationship between a next friend and a real party in interest and (2) because an animal cannot be represented, under our laws, by a "next friend."

First, "[i]n order to establish next-friend standing, the putative next friend must show: (1) that the petitioner is unable to litigate his own cause due to mental incapacity, lack of access to court, or other similar disability; and (2) the next friend has some significant relationship with, and is truly dedicated to the best interests of, the petitioner." *Coalition of Clergy v. Bush*, 310 F.3d 1153, 1159–60 (9th Cir. 2002) (*quoting Massie ex rel. Kroll v. Woodford*, 244 F.3d 1192, 1194 (9th Cir. 2001)). Here, we are concerned with the second requirement. PETA does not claim to have a relationship with Naruto that is any more significant than its relationship with any other animal. Thus, PETA fails to meet the "significant relationship" requirement and cannot sue as Naruto's next friend.[3]

---

[3] We feel compelled to note that PETA's deficiencies in this regard go far beyond its failure to plead a significant relationship with Naruto. Indeed, if any such relationship exists, PETA appears to have failed to live up to the title of "friend." After seeing the proverbial writing on the wall at oral argument, PETA and Appellees filed a motion asking this court to dismiss Naruto's appeal and to vacate the district court's adverse judgment, representing that PETA's claims against Slater had been settled. It remains unclear what claims PETA purported to be "settling," since the court was under the impression this lawsuit was about Naruto's claims,

But, even if PETA had alleged a significant relationship with Naruto, it still could not sue as Naruto's next friend. In *Whitmore v. Arkansas*, 495 U.S. 149 (1990), the Supreme Court discussed "next friend" standing in a habeas case in which a third-party litigant sought to challenge the death sentence of a capital defendant, Simmons, who had forsworn his right to appeal. In considering whether the third-party, Whitmore, had standing to sue on behalf of Simmons, the Court emphasized the limited nature of "next friend" standing and explained the rationale behind its limitations. For example, requiring a showing of incompetency and a "significant relationship" ensures that "the litigant asserting

---

and per PETA's motion, Naruto was "not a party to the settlement," nor were Naruto's claims settled therein. Nevertheless, PETA apparently obtained something from the settlement with Slater, although not anything that would necessarily go to Naruto: As "part of the arrangement," Slater agreed to pay a quarter of his earnings from the monkey selfie book "to charities that protect the habitat of Naruto and other crested macaques in Indonesia." *See Settlement Reached: 'Monkey Selfie' Case Broke New Ground For Animal Rights*, PETA, https://www.peta.org/blog/settlement-reached-monkey- selfie-case-broke-new-ground-animal-rights/ (last visited Apr. 5, 2018). But now, in the wake of PETA's proposed dismissal, Naruto is left without an advocate, his supposed "friend" having abandoned Naruto's substantive claims in what appears to be an effort to prevent the publication of a decision adverse to PETA's institutional interests. Were he capable of recognizing this abandonment, we wonder whether Naruto might initiate an action for breach of confidential relationship against his (former) next friend, PETA, for its failure to pursue his interests before its own. Puzzlingly, while representing to the world that "animals are not ours to eat, wear, experiment on, use for entertainment, or abuse in any other way," *see* PETA, https://peta.org (last visited Apr. 5, 2018), PETA seems to employ Naruto as an unwitting pawn in its ideological goals. Yet this is precisely what is to be avoided by requiring next friends to have a significant relationship with, rather than an institutional interest in, the incompetent party—a point made by Chief Justice Rehnquist in *Lenhard v. Wolff*, 443 U.S. 1306, 1312 (1979). *See infra* page 9 for exact language.

only a generalized interest in constitutional governance" does not "circumvent the jurisdictional limits of Article III simply by assuming the mantle of 'next friend.'" *Id.* at 164. In short, requirements of a significant interest in the subject party protect against abuses of the third-party standing rule. As the Court noted in a prior case, "however worthy and high minded the motives of 'next friends' may be, they inevitably run the risk of making the actual [party] a pawn to be manipulated on a chessboard larger than his own case." *Lenhard v. Wolff*, 443 U.S. 1306, 1312 (1979). Based on the dangers inherent in any third-party standing doctrine, the Court declined to expand "next friend" standing beyond what was authorized by Congress in the habeas corpus statute. *Whitmore*, 495 U.S. at 164–165.

Here, we follow the Supreme Court's lead in holding that "the scope of any federal doctrine of 'next friend' standing is no broader than what is permitted by the . . . statute." *Id.* Although Congress has authorized "next friend" lawsuits on behalf of habeas petitioners, *see* 28 U.S.C. § 2242, and on behalf of a "minor or incompetent person," *see* Fed. R. Civ. P. 17(c), there is no such authorization for "next friend" lawsuits brought on behalf of animals. Our precedent on statutory interpretation should apply to court rules as well as statutes: if animals are to be accorded rights to sue, the provisions involved therefore should state such rights expressly. *See Cetacean Cmty.*, 386 F.3d at 1179. Because we believe the Supreme Court's reasoning in *Whitmore* counsels against court-initiated expansion of "next friend" standing, we decline to recognize the right of next friends to bring suit on behalf of animals, absent express authorization from Congress.

Even so, we must proceed to the merits because Naruto's lack of a next friend does not destroy his standing to sue, as having a "case or controversy" under Article III of the Constitution.  Federal Rule of Civil Procedure 17, which authorizes "next friend" lawsuits, obligates the court "to consider whether [incompetent parties] are adequately protected," even where they have no "next friend" or "guardian." *U.S. v. 30.64 Acres of Land*, 795 F.2d 796, 805 (9th Cir. 1986).  Within this obligation, the court has "broad discretion and need not appoint a guardian ad litem [or next friend] if it determines the person is or can be otherwise adequately protected." *Id.* (citing *Roberts v. Ohio Casualty Ins. Co.*, 2556 F.2d 35, 39 (5th Cir. 1958) ("Rule 17(c) does not make the appointment of a guardian ad litem mandatory.")).  *See also Harris v. Mangum*, 863 F.3d 1133, 1139 n.2 (9th Cir. 2017) (noting circumstances in which "appointing a guardian ad litem . . . could hinder the purpose of Rule 17(c)," and thus was not required).  For example, "the court may find that the incompetent person's interests would be adequately protected by the appointment of a lawyer." *Krain v. Smallwood*, 880 F.2d 1119, 1121 (9th Cir. 1989) (citing *Westcott v. United States Fidelity & Guaranty Co.*, 158 F.2d 20, 22 (4th Cir. 1946).  Indeed, courts have done just this, and the fact that those courts did not then dismiss the case proves that the lack of a next friend does not destroy an incompetent party's standing.  *See, e.g., Westcott*, 158 F.2d at 22 (affirming judgment against minor who was represented by an attorney but not a guardian ad litem).[4]

---

[4] Here, we find that this case was briefed and argued by competent counsel who represented the legal interests of the incompetent party, but not a person, Naruto.  Thus, his interests up to submission of the case following oral argument were adequately protected, notwithstanding any deficiencies in PETA's "next friend" relationship.

Concluding otherwise would conflict with our precedent. In *Cetacean Community*, 386 F.3d at 1171, we held that a group of cetaceans could demonstrate Article III standing. There, the cetaceans had no purported "next friend." Thus, were we to vacate the case we have before us now and remand with instructions to dismiss because of PETA's failure to establish "next friend" standing, our jurisprudence would permit a case brought "directly" by animals without any allegation that the suit was brought by a "next friend"—as was the case in *Cetacean*—but would not permit a case brought by an organization as the "next friend" of the animal at issue if the organization failed to meet the relational requirements. That cannot be the law. We thus hold that Naruto's Article III standing under *Cetacean* is not dependent on PETA's sufficiency as a guardian or "next friend," and we proceed to our Article III standing analysis.[5]

---

[5] This is where we depart from the concurring opinion. First, Judge N.R. Smith seems to posit that we must restrict our inquiry into Article III standing and its effect on jurisdiction to an examination of the validity of the claimed Next Friend status, because that is how the complaint is stated. *See infra*, note 8 (Smith, J., concurring in part). In other words, since Naruto's only stated basis for jurisdiction is Next Friend status, we can determine whether we have jurisdiction by examining only the validity of the Next Friend claim. But such a restriction is contrary to our long held and often restated duty to examine *sua sponte* whether jurisdiction exists, regardless how the parties have framed their claims. *See, e.g. Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) ("When a requirement goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte* the issues that the parties have disclaimed or have not presented. Subject matter jurisdiction can never be waived or forfeited.") (internal citations omitted). We therefore respectfully reject this suggested limitation.

Next, although Judge N.R. Smith agrees that an animal cannot sue by next friend, he nevertheless limits his analysis to cases involving next friend suits under statutes which contain particular next friend provisions. Under *Whitmore* and *Coalition*, he argues, we must dismiss based on

## II.  Article III Standing

The *Cetacean* court held that all of the world's whales, dolphins, and porpoises (the "Cetaceans"), through their self-appointed lawyer, alleged facts sufficient to establish standing under Article III.  386 F.3d at 1175.  The Cetaceans alleged concrete physical injuries caused by the Navy's sonar systems in a suit brought by the "self-appointed attorney for

PETA's insufficiency as a "next friend." But if we all agree that suits by animals *cannot* be brought under FRCP 17, because the rule refers only to "persons," not "animals," why would we want to follow and be bound by habeas cases for humans for which the statute (§ 2242) expressly *provides* next friend standing? The concurrence does not explain this point.

In our view, the question of standing was explicitly decided in *Cetacean*. Although, as we explain later, we believe *Cetacean* was wrongly decided, we are bound by it. Short of an intervening decision from the Supreme Court or from an en banc panel of this court, *see Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003), we cannot escape the proposition that animals have Article III standing to sue. With this as a starting premise, how could it be that PETA's deficiency as Naruto's representative could destroy Naruto's otherwise valid Article III standing? Again, the concurrence fails to explain.

Judge N.R. Smith insightfully identifies a series of issues raised by the prospect of allowing animals to sue. For example, if animals may sue, who may represent their interests? If animals have property rights, do they also have corresponding duties? How do we prevent people (or organizations, like PETA from using animals to advance their human agendas? In reflecting on these questions, Judge Smith reaches the reasonable conclusion that animals should not be permitted to sue in human courts. As a pure policy matter, we agree. But we are not a legislature, and this court's decision in *Cetacean* limits our options. What we *can* do is urge this court to reexamine *Cetacean*. *See infra* note 6. What we *cannot* do is pretend *Cetacean* does not exist, or that it states something other, or milder, or more ambiguous on whether cetaceans have Article III standing.

all of the world's whales, porpoises, and dolphins." *Id.* at 1171. The Ninth Circuit made clear that the "sole plaintiff in this case" is the Cetaceans and did not discuss "next friend" or third-party standing. *Id.* Although the Ninth Circuit affirmed the district court's dismissal because the Cetaceans lacked statutory standing under the environmental statutes at issue in that case, the court stated that "Article III does not compel the conclusion that a statutorily authorized suit in the name of an animal is not a 'case or controversy.'"[6] *Id.* at 1175.

Here, the complaint alleges that Naruto is the author and owner of the Monkey Selfies. The complaint further alleges

---

[6] The use of the double negative here is problematic in that it creates unnecessary ambiguity in the court's holding. Better, we think, to say a petition is "timely" than that it is "not untimely," for example. Better here to have said the animal has Article III standing. "This type of litotes (the negation of an opposite) often makes language convoluted. George Orwell ridiculed it with this example: 'A not unblack dog was chasing a not unsmall rabbit across a not ungreen field.'" BRYAN GARNER, GARNER'S MODERN AMERICAN USAGE 545 (2003) (citing "Politics and the English Language" (1946), in *4 Collected Essays, Journalism and Letters of George Orwell* 127, 138 n.1 (1968)). But this language does not change our ultimate conclusion. If nothing about Article III *compels* the conclusion that animals lack standing, then it cannot also be true that animals lack standing simply by virtue of their being animals. In other words, *Cetacean* at the very least holds that it is *possible* for animals, like humans, to demonstrate the kind of case or controversy required to establish Article III standing. Although the claims in *Cetacean* sounded in physical harm to plaintiffs, and the claims in *Naruto* sound in economic harm to Naruto, that difference is not a point of distinction for Article III purposes. "Cases or Controversies" have described claims involving property interests, as well as claims involving personal injuries, since the Founding, and before, at common law. Thus, the sort of blanket exclusion of animals from Article III jurisdiction which Judge N.R. Smith advocates is, alas, fundamentally inconsistent with *Cetacean*'s holding.

that Naruto has suffered concrete and particularized economic harms as a result of the infringing conduct by the Appellees, harms that can be redressed by a judgment declaring Naruto as the author and owner of the Monkey Selfies. Under *Cetacean*, the complaint includes facts sufficient to establish Article III standing. Therefore, we must determine whether Naruto has statutory standing[7] to sue for

---

[7] Mindful that the term "standing" carries with it jurisdictional connotations, we clarify that our use of the term "statutory standing" refers to Naruto's ability to sue under the Copyright Act, not his ability to sue generally. Thus, as we have observed in previous cases, "[t]hough lack of *statutory* standing requires dismissal for failure to state a claim, lack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). The former is a determination on the merits, while the latter is purely jurisdictional.

While we believe *Cetacean* was incorrectly decided, it is binding circuit precedent that non-human animals enjoy constitutional standing to pursue claims in federal court. *See Cetacean*, 386 F.3d at 1175–76; *see also Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1106 (9th Cir.), cert. denied sub nom. *FCA U.S. LLC v. Ctr. for Auto Safety*, 137 S. Ct. 38, 196 L. Ed. 2d 26 (2016) ("While we have the authority to distinguish precedent on a principled basis, we are not free to ignore the literal meaning of our rulings, even when the panel believes the precedent is 'unwise or incorrect.'") (quoting *Hart v. Massanari*, 266 F.3d 1155, 1170 (9th Cir. 2001)). Although we must faithfully apply precedent, we are not restrained from pointing out, when we conclude after reasoned consideration, that a prior decision of the court needs reexamination. This is such a case.

Animals have neither constitutional nor statutory standing. Article III standing "often turns on the nature and source of the claim asserted." *Warth v. Seldin*, 422 U.S. 490, 500 (1975). Other than *Cetacean*, no case has held that animals have constitutional standing to pursue claims in federal court. *See e.g., Tilikum ex rel. People for the Ethical Treatment of Animals, Inc. v. Sea World Parks & Entm't, Inc.*, 842 F. Supp. 2d 1259 (S.D. Cal. 2012) (Thirteenth Amendment prohibition on slavery and

Case 3:15-cv-04324-WHO Document 58-1 Filed 04/23/18 Page 15 of 41

copyright infringement.

## III.    Statutory Standing under the Copyright Act

In *Cetacean*, this court stated the following with respect to statutory standing for animals:

> We agree with the district court in *Citizens to End Animal Suffering & Exploitation, Inc.*, that "[i]f Congress and the President intended to take the extraordinary step of authorizing animals as well as people and legal entities to sue, they could, and should, have said so plainly." *In the absence of any such statement* in the ESA, the MMPA, or NEPA, or the APA, we conclude that the Cetaceans do not have statutory standing to sue.

---

involuntary servitude applied only to humans, and thus whales lacked Article III standing to bring action against operator of theme park under Thirteenth Amendment). Prior to *Cetacean*, no court ever intimated that animals possess interests that can form the basis of a case or controversy. As to statutory standing, Congress has never provided that animals may sue in their own names in federal court, and there is no aspect of federal law (other than *Cetacean*) that has ever recognized that animals have the right to sue in their own name as a litigant. To that point, Rule 17(a) requires that the suit be brought in the name of the "party in interest"; and that next friend or guardian representation obtains only for a *person*. *See* Fed. R. Civ. P. 17(c).  Because animals do not possess cognizable interests, it stands to reason that they cannot bring suit in federal court in their own names to protect such interests unless Congress determines otherwise.

*Id.* at 1179 (emphasis added).**⁸** The court in *Cetacean* did not rely on the fact that the statutes at issue in that case referred to "persons" or "individuals." *Id.* Instead, the court crafted a simple rule of statutory interpretation: if an Act of Congress plainly states that animals have statutory standing, then animals have statutory standing. If the statute does not so plainly state, then animals do not have statutory standing. The Copyright Act does not expressly authorize animals to file copyright infringement suits under the statute.**⁹** Therefore,

---

**⁸** In *Citizens to End Animal Suffering & Exploitation, Inc. v. New England Aquarium*, 836 F. Supp. 45, 49 (D. Mass. 1993), a dolphin and several animal-rights organizations filed suit against the United States Department of the Navy and the Department of Commerce under the Marine Mammal Protection Act (MMPA). The plaintiffs alleged that the dolphin's transfer from the New England Aquarium to the Department of the Navy violated its rights under the MMPA. Without distinguishing between "statutory standing" and Article III standing, the district court granted the defendants' motion for summary judgment because the dolphin lacked standing to sue under the MMPA. *Id.* ("This court will not impute to Congress or the President the intention to provide standing to a marine mammal without a clear statement in the statute."). The plaintiffs did not file an appeal. *Id.*

**⁹** PETA also argues that the Copyright Act contemplates statutory standing for animals because it permits statutory standing for corporations and unincorporated associations without express authorization for those non-human entities. That argument does not refute the requirement, established in *Cetacean*, that Congress plainly state any grant of statutory standing to animals. Also, the Supreme Court has held corporations to be "persons" for standing, both for constitutional and statutory purposes. *See, e.g.*, *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 341–42 (2010) (concluding that corporations—associations of persons—have speech rights under the First Amendment); *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2768 (2014) (concluding that the plaintiff corporation was a "person" under the Religious Freedom Restoration Act of 1993). Moreover, corporations and unincorporated associations are formed and owned by humans; they are not formed or owned by animals.

based on this court's precedent in *Cetacean*, Naruto lacks statutory standing to sue under the Copyright Act.**[10]**

Several provisions of the Copyright Act also persuade us against the conclusion that animals have statutory standing to sue under the Copyright Act. *See Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."). For example, the "children" of an "author," "whether legitimate or not," can inherit certain rights under the Copyright Act. *See* 17 U.S.C. §§ 101, 201, 203, 304. Also, an author's "widow or widower owns the author's entire termination interest unless there are any surviving children or grandchildren of the author, in which case the widow or widower owns one-half of the author's interest." *Id.* § 203(a)(2)(A). The terms "children," "grandchildren," "legitimate," "widow," and "widower" all imply humanity and necessarily exclude animals that do not marry and do not have heirs entitled to property by law. Based on this court's decision in *Cetacean* and the text of the

---

*See Bank of the U.S. v. Deveaux*, 9 U.S. 61, 92 (1806) (looking to "the character of the individuals who compose the corporation" in recognizing for the first time the capacity of corporations to sue in federal court).

**[10]** PETA also argues that *Cetacean* is distinguishable because the statutes at issue in *Cetacean* represented a waiver of the United States' sovereign immunity, and such waivers, unlike the Copyright Act, are narrowly construed. *See United States v. Nordic Vill., Inc.*, 503 U.S. 30, 34 (1992) ("[T]he Government's consent to be sued 'must be construed strictly in favor of the sovereign' . . . .") (citation omitted). However this court never mentioned sovereign immunity in *Cetacean*, nor did it imply that it narrowly construed the statutory language of the four statutes at issue under the canon of construction described by PETA to reach its decision.

Copyright Act as a whole, the district court did not err in concluding that Naruto—and, more broadly, animals other than humans—lack statutory standing to sue under the Copyright Act.

## IV.    Attorneys' Fees

Counsel for Slater and Wildlife requests that the court grant him appellate-stage attorneys' fees and remand to the district court for the determination of the amount of those fees.[11]    Counsel for Slater and Wildlife is entitled to attorneys' fees and costs for this appeal. *See Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994). Thus, the request in the answering brief by Slater and Wildlife for an award of attorneys' fees on appeal is granted.[12] The determination of an appropriate amount of fees on appeal is transferred to the district court pursuant to Ninth Circuit Rule 39-1.8.

**AFFIRMED.**

---

[11] *See* 17 U.S.C. § 505 ("In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs."). By stipulation, the parties have deferred the determination of trial-stage attorneys' fees until the resolution of this appeal.

[12] We do not speculate on the effect that any settlement agreement, such as that mentioned in the joint motion to dismiss and vacate, may have on Appellees' ability to realize any such award. We note that the joint motion recited that Appellant Naruto was not a party to the settlement agreement.

**N.R. SMITH, Circuit Judge, concurring in part:**

I concur that this case must be dismissed. Federal courts do not have jurisdiction to hear this case at all. Because the courts lack jurisdiction, the appeal should be dismissed and the district court's judgment on the merits should be vacated. *Coal. of Clergy, Lawyers, & Professors v. Bush*, 310 F.3d 1153, 1162–65 (9th Cir. 2002) ("Because we conclude that the Coalition lacks [next-friend or third-party] standing, we decline to reach the remaining questions addressed by the district court . . . . We therefore vacate those portions of the district court's opinion which reached those questions."). Indeed, where there is no standing, any further ruling "is, by very definition, for a court to act ultra vires." *Id.* at 1165 (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–02 (1998)). The Majority misses this point. I write to express my disagreement with the Majority's conclusion that next-friend standing[1] is nonjurisdictional.[2]

---

[1] People for the Ethical Treatment of Animals, Inc. (PETA) grounded the jurisdiction for this suit in the next-friend standing doctrine. As pleaded: "[PETA] brings this action on behalf of, and as next friend[] to, Naruto, pursuant to Rule 17(b) of the Federal Rules of Civil Procedure, because Naruto's rights cannot be effectively vindicated except through an appropriate representative." Complaint at 3, *Naruto v. Slater*, No. 15-cv-04324 (N.D. Cal. Sept. 21, 2015).

Next-friend standing is an "alternative basis for standing" where the litigant pursues the action on behalf of the "real party in interest." *Whitmore v. Arkansas*, 495 U.S. 149, 161–63 (1990). Next-friend standing requires (1) "an adequate explanation—such as inaccessibility, mental incompetence, or other disability—why the real party in interest cannot appear on his own behalf to prosecute the action"; and (2) "the 'next friend' must be truly dedicated to the best interests of the person on whose behalf he seeks to litigate, and it has been further suggested that a 'next

As the Majority opinion highlights in its treatment of the merits, PETA brought a frivolous lawsuit here. The argument that animals have statutory standing to maintain a Copyright Act claim—or any property right claims—is an easy question. Under the holding in *Cetacean Community v. Bush*, 386 F.3d 1169 (9th Cir. 2004), the Copyright Act, and basic property law, animals have no such rights.

However, to reach its conclusion on the Copyright Act question, the Majority ignores its own conclusion regarding standing, instead determining that: (1) next-friend standing is nonjurisdictional; and (2) even if the elements of next-friend standing are not met, any third-party may still bring suit on behalf of anyone or anything—without the real party in interest's permission—as long as (A) the real party in interest has an Article III injury; and (B) the real party in interest is "adequately protected" by the purported next friend's (or self-appointed lawyer's) representation. Maj. Op. at 9–11. That determination fails to follow United States Supreme Court or Ninth Circuit precedent. Let me explain.

---

friend' must have some significant relationship with the real party in interest." *Id.* at 163–64 (internal citations omitted).

[2] The Majority states that "Naruto's Article III standing under *Cetacean* is not dependent on PETA's sufficiency as a guardian or 'next friend.'" Maj. Op. at 11. Put another way, the Majority simply says that lack of next-friend standing is nonjurisdictional, and (regardless of "PETA's sufficiency" to advance Naruto's claim) it may nonetheless resolve this case.

Case 3:15-cv-04324-WHO Document 58-1 Filed 04/23/18 Page 21 of 41

The Supreme Court was explicit:

> The burden is on the "next friend" clearly to establish the propriety of his status and *thereby justify the jurisdiction of the court*.

> These limitations on the "next friend" doctrine are driven by the recognition that "[i]t was not intended that the writ of habeas corpus should be availed of, as matter of course, by intruders or uninvited meddlers, styling themselves next friends." Indeed, if there were no restriction on "next friend" standing in federal courts, *the litigant asserting only a generalized interest in constitutional governance could circumvent the jurisdictional limits of Art. III simply by assuming the mantle of "next friend."*

*Whitmore*, 495 U.S. at 164 (emphasis added & internal citations omitted) (quoting *United States ex rel. Bryant v. Houston*, 273 F. 915, 916 (2d Cir. 1921)). We have also been explicit: failing to meet the standing requirements for next-friend standing removes jurisdiction of the court. *Coalition*, 310 F.3d at 1162–65 (dismissing case and vacating lower ruling which reached the merits, after finding there was no next-friend standing); *see also Massie ex rel. Kroll v. Woodford*, 244 F.3d 1192, 1198–99 (9th Cir. 2001) (per curiam) (dismissing emergency motion for a stay of execution because purported next friend failed to meet the standing requirements).

To buttress these conclusions, I (1) outline the basics of Article III standing and the next friend exception to Article

III standing; (2) summarize the Majority's reasoning and decision; and (3) demonstrate the legal errors in the Majority opinion.

## I.　The basics of Article III standing and next-friend standing.

Article III of the United States Constitution limits the Federal Judiciary's power to "cases" and "controversies." U.S. Const. Art. III, § 2, cl. 1. The "doctrine of standing" is one of the "landmarks" that "set[s] apart the 'Cases' and 'Controversies' that are of the justiciable sort referred to in Article III—'serving to identify those disputes which are appropriately resolved through the judicial process.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (original alterations omitted) (quoting *Whitmore*, 495 U.S. at 155); *see also Warth v. Seldin*, 422 U.S. 490, 498 (1975) ("In its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art. III."); *Coalition*, 310 F.3d at 1157 ("At its constitutional core, standing is a manifestation of the Article III case-or-controversy requirement; it is the determination of whether a specific person is the proper party to *invoke the power of a federal court*." (emphasis added)). "[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan*, 504 U.S. at 560. Accordingly, the Supreme Court has "deduced a set of requirements that together make up the 'irreducible constitutional minimum of standing.'" *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014) (quoting *Lujan*, 504 U.S. at 560).

Part of the Article III case-or-controversy requirement is the obvious derivative premise that "the plaintiff generally must assert his own legal rights and interests." *Warth*, 422 U.S. at 499 (citing *Tileston v. Ullman*, 318 U.S. 44, 46 (1943); *United States v. Raines*, 362 U.S. 17, 21 (1960); *Barrows v. Jackson*, 346 U.S. 249, 255 (1953)); *see also Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1689 (2017) ("Ordinarily, a party must assert his own legal rights and cannot rest his claim to relief on the legal rights of third parties." (alterations, internal quotation marks, and citations omitted)); *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 623 n.3 (1989) (identifying that "whether the litigant suffered some injury-in-fact, adequate to satisfy Article III's case-or-controversy requirement" is the first of two questions the Court asks "[w]hen a person or entity seeks standing to advance the constitutional rights of others"). "This Court, as is the case with all federal courts, 'has no jurisdiction to pronounce any statute, either of a state or of the United States, void, because irreconcilable with the constitution, except as it is called upon to adjudge the legal rights of litigants in *actual controversies*." *Raines*, 362 U.S. at 21 (emphasis added).

With only a single, narrow exception, a person filing a claim must assert a personal injury in fact[3] to establish

---

[3] Even in third-party standing (where a party has an Article III injury, but she must advance *someone else's* rights to achieve redress), the plaintiff must have suffered an injury. *See, e.g.*, *Kowalski v. Tesmer*, 543 U.S. 125, 129 n.2 (2004) (assuming without deciding that plaintiffs alleged an adequate individual injury to satisfy the "constitutional minimum of standing" before continuing to address the standards for permitting a third party "to assert the rights of another"); *Lexmark Int'l, Inc.*, 134 S. Ct. at 1387 n.3 (noting cases articulating that the Article III basis for third-party standing is "closely related to the question whether a

standing. *Lujan*, 504 U.S. at 560–61. This exception is next-friend standing, where a third-party—without alleging its own injury—is allowed to bring suit on behalf of the named-party, who is either (1) an incompetent or minor; or (2) unable to access the courts because of imprisonment. With next-friend standing, the party in interest has an Article III injury, but because of the disabling aspect (minority, incompetence, or imprisonment), the real party cannot advance the action, except where another person (the next friend) stands in and advances the cause on the actual party's behalf. *Whitmore*, 495 U.S. at 161–66.

## A. The basics of next-friend standing.

The Supreme Court considers next-friend standing an "alternative basis" for standing in federal courts. *Id.* at 161. Specifically, it has "long been an accepted basis for jurisdiction in certain circumstances." *Id.* at 162. These "certain circumstances" are deeply rooted in history and narrowly limited to: (1) habeas corpus actions; and (2) "infants, other minors, and adult mental incompetents." *Id.* at 163, 163 n.4.

Next-friend standing allows a third-party to singularly advance a cause of action on another's behalf. "A 'next friend' does not himself become a party to the . . . action in which he participates, but simply pursues the cause on behalf

---

person in the litigant's position will have a right of action on the claim.") (quoting *Dep't of Labor v. Triplett*, 494 U.S. 715, 721 n.** (1990))). In this case, PETA does not (nor could it) allege either individual or third-party standing. It does not have any cognizable Article III injury for the alleged Copyright Act violations against Naruto. Hence, I do not further address either of these bases for standing.

of the . . . real party in interest." *Id.* at 163. To invoke next-friend standing, the purported next friend must establish: (1) "an adequate explanation—such as inaccessibility, mental incompetence, or other disability—why the real party in interest cannot appear on his own behalf to prosecute the action"; and (2) "the 'next friend' must be truly dedicated to the best interests of the person on whose behalf he seeks to litigate, and it has been further suggested that a 'next friend' must have some significant relationship with the real party in interest." *Id.* at 163–64 (internal citations omitted). I agree with the Majority that there is no question PETA did not allege—in any way—sufficient facts to establish it could be Naruto's next friend.

### B. Next-friend standing cannot apply to animals.

I also agree with the Majority that animals cannot be represented by a next friend; I write to expand on the reasoning provided in the Majority opinion.

### 1. Next-friend standing for animals is barred by Supreme Court precedent.

The Supreme Court has clearly delineated the limits of next-friend standing: "[T]he scope of any federal doctrine of 'next friend' standing is *no broader than what is permitted by . . . the historical practice*." *Id.* at 164–65; *cf. Town of Greece v. Galloway*, 134 S. Ct. 1811, 1818–19 (2014) (recognizing legislative prayer as a "historical" exception to the Establishment Clause); *District of Columbia v. Heller*, 554 U.S. 570, 626–27, 627 n.26, 626 (2008) ("[N]othing in our opinion should be taken to cast doubt on the *longstanding prohibitions* on the possession of firearms by felons and the mentally ill[.]" (emphasis added)). The Supreme Court noted

the two illustrations allowed by such "historical practice": imprisoned individuals using habeas corpus and mental incompetents or minors. *Whitmore*, 495 U.S. at 161–63, 163 n.4; *see also* 28 U.S.C. § 2242 (codifying next-friend standing for habeas corpus actions; Fed. R. Civ. P. 17(c)(2) (permitting next-friend standing for a "minor or an incompetent *person* who does not have a duly appointed representative" (emphasis added)). However, there is no historical evidence that animals have ever been granted authority to sue by next friend and, absent an act of Congress,[4] it would be improper to expand this narrow exception to the actual injury requirement of Article III.

## 2. There is no textual support in either the habeas corpus statute or Rule 17 for animal next friends.

Neither of the two existing grounds for next-friend standing allow animal next-friend standing. First, a writ for habeas corpus "shall be in writing signed and verified by the *person* for whose relief it is intended or by someone acting *in his behalf*." 28 U. S. C. § 2242 (emphasis added). Therefore, textually, only a natural person can have a petition filed on her behalf. Further, any argument that animals are akin to "artificial persons" such as corporations, which are allowed to sue, *see e.g.*, *Cetacean*, 386 F.3d at 1176 (concluding that animals are no different from various "artificial persons" such as ships or corporations), makes no sense in the context of

---

[4] Even if such a statute were enacted, such a statutory grant of standing would still need meet the Article III standing "case or controversy" requirement. Because it would lack the pre-constitutional historical use like habeas actions or actions on behalf of minors or incompetent persons, I have grave doubts this would succeed.

28 U.S.C. § 2242. Corporations cannot be imprisoned and, thus, there is no grounds to conclude "person" in 28 U.S.C. § 2242 could include anything other than natural persons.

Second, the Federal Rules only authorize next friend suits on behalf of "a minor or an incompetent *person*." Fed. R. Civ. P 17(c) (emphasis added). Per the text, this can only apply to human persons, not any "minor" or "incompetent" corporations or animals. Importantly, the historical background of Rule 17(c) limits the use of next friends to only human persons. Rule 17(c) incorporated Rule 70 of the Federal Equity Rules into the Federal Rules of Civil Procedure. Fed. R. Civ. P. 17(c), Note to Subdivision (c). Rule 70 specifically provided, "All infants and other persons so incapable may sue by their guardians, if any, or by their *prochei ami* [next friend]." Fed. Equity R. 70. Finally, the provisions for corporate capacity are articulated in Rule 17(b). Fed. R. Civ. P. 17(b). This separate enumeration of rules for non-human entities, Rule 17(b), is a clear textual indication that the use of the term "person" in Rule 17(c) does not include non-human entities, such as corporations or animals.

### 3. Allowing next-friend standing for animals would violate the public policy behind next-friend standing.

In addition to its historical limits, next-friend standing is narrowly tailored in light of the public policy concerns associated with expanding the doctrine. Next-friend standing "is by no means granted automatically to whomever seeks to pursue an action on behalf of another." *Whitmore*, 495 U.S. at 163. "Indeed, if there were no restriction on 'next friend' standing in federal courts, the litigant asserting only a

generalized interest in constitutional governance could circumvent the jurisdictional limits of Art. III simply by assuming the mantle of 'next friend.'" *Id.* at 164. The specific requirements to become a next friend are intended to keep "intruders or uninvited meddlers, styling themselves next friends" out of the courts. *Id.* at 164 (quoting *Houston*, 273 F. at 916). Moreover, as Chief Justice Rehnquist (writing as the sole justice for the Supreme Court on a stay of execution) similarly noted: "however worthy and high minded the motives of 'next friends' may be, they inevitably run the risk of making the actual defendant a pawn to be manipulated on a chessboard larger than his own case." *Lenhard v. Wolff*, 443 U.S. 1306, 1312 (1979).

Animal-next-friend standing is particularly susceptible to abuse. Allowing next-friend standing on behalf of animals allows lawyers (as in *Cetacean*) and various interest groups (as here) to bring suit on behalf of those animals or objects *with no means or manner to ensure the animals' interests are truly being expressed or advanced*. Such a change would fundamentally alter the litigation landscape. Institutional actors could simply claim some form of relationship to the animal or object to obtain standing and use it to advance their own institutional goals with no means to curtail those actions. We have no idea whether animals or objects wish to own copyrights or open bank accounts to hold their royalties from sales of pictures. To some extent, as humans, we have a general understanding of the similar interests of other humans.[5] In the habeas corpus context, we presume other

---

[5] I intentionally do not refer to the human-controlled entities such as corporations or ships, because those entities never have next-friend standing. They have corporate officers or owners to advance their claims. Indeed, a shareholder, who would likely meet the next-friend standing

humans desire liberty. Similarly, in actions on behalf of infants, for example, we presume the infant would want to retain ownership of the property she inherited. But the interests of animals? We are really asking what *another species* desires. Do animals want to own property, such as copyrights? Are animals willing to assume the duties associated with the rights PETA seems to be advancing on their behalf?[6] Animal-next-friend standing is materially different from a competent person representing an incompetent person. We have millennia of experience understanding the interests and desire of humankind. This is not necessarily true for animals. Because the "real party in interest" can actually *never credibly articulate its interests or goals*, next-friend standing for animals is left at the mercy of the institutional actor to advance its own interests, which it *imputes* to the animal or object with *no accountability*. This literally creates an avenue for what Chief Justice Rehnquist feared: making the actual party in interest a "pawn to be

---

requirements, generally cannot even bring a suit on behalf of the corporation. *See e.g.*, *Franchise Tax Bd. of Cal. v. Alcan Aluminium Ltd.*, 493 U.S. 331, 336 (1990) (holding that "generally . . . shareholders [are prohibited] from initiating actions to enforce the rights of the corporation").

[6] Participation in society brings rights and corresponding duties. The right to own property is not free from duties. One must pay taxes on profits from a royalty agreement for use of a copyrighted image. Are animals capable of shouldering the burden of paying taxes? Similarly, all people have a duty to obey the law and, for example, not commit intentional torts. Should animals liable for intentional torts as well? The concept of expanding actual property rights—and rights broadly—to animals necessitates resolving what *duties* also come with those rights and, because animals cannot communicate in our language, *who* stands in their shoes?

manipulated on a chessboard larger than his own case." *Lenhard*, 443 U.S. at 1312.

## II. The Majority opinion.

Although the Majority opinion recognizes these principles, it ignores them. The Majority opinion *states* that animals cannot have next-friend standing, but it nevertheless determines that, because Naruto has an Article III injury and he is "adequately protected," the Majority may proceed to determine the merits of Naruto's statutory standing claim under the Copyright Act. Maj. Op. at 9–15. In order to get there, the Majority concludes that next-friend standing is nonjurisdictional: "[W]e must proceed to the merits because Naruto's lack of a next friend does not destroy his standing to sue, as having a 'case or controversy' under Article III of the Constitution," and concludes that "Naruto's Article III standing under *Cetacean* is not dependent on PETA's sufficiency as a guardian or 'next friend.'" Maj. Op. at 10, 11. I admit that the basis for the Majority's conclusion is primarily grounded in its reading of *Cetacean*, in which a "self-appointed attorney" brought a suit on behalf of the world's cetaceans. 386 F.3d at 1171–72. *Cetacean* concluded that animals may have an Article III injury—but, notably, did not examine whether next-friend standing was present. Given this analysis, the Majority concludes that, because the *Cetacean* panel allowed the case to go forward, it implicitly held that next-friend standing is nonjurisdictional. Maj. Op. at 11.

The Majority's conclusion on the first point—animals can never have next-friend standing—is correct[7] and should end

---

[7] As such, I concur in the Majority's opinion to that extent.

our inquiry. *See infra.* On the other hand, the second conclusion (that next-friend standing is nonjurisdictional) is not supportable. This conclusion is incorrect and the consequences associated with the Majority's holding are avoidable, if we follow precedent.

### III.    The Majority's conclusion that next-friend standing is nonjurisdictional is legally unsupportable.

#### A. The Majority's second conclusion violates Supreme Court and Ninth Circuit Precedent.

Both the United States Supreme Court and our Circuit have held next-friend standing is jurisdictional. In *Whitmore*, the petitioner brought suit on behalf of another death-row prisoner, Ronald Simmons. 495 U.S. at 152–54. Whitmore asserted both third-party standing and next-friend standing to justify the suit. *Id.* at 153–54. The Supreme Court held that Whitmore failed both standing tests and, ultimately held that "Jonas Whitmore lacks standing to proceed in this Court, and the writ of certiorari is dismissed *for want of jurisdiction*." *Id.* at 166 (emphasis added). The Supreme Court also clearly held that any purported next friend bears the burden "clearly to establish the propriety of his status *and thereby justify the jurisdiction of the court*." *Id.* at 164 (emphasis added) (citing *Mo. Pub. Def. Comm'n ex rel. Smith v. Armontrout*, 812 F.2d 1050, 1053 (8th Cir. 1987); *Grouseclose ex rel. Harries v. Dutton*, 594 F. Supp. 949, 952 (M.D. Tenn. 1984)); *see also Demosthenes v. Baal*, 495 U.S. 731, 737 (1990) (holding that "federal courts must make certain that an adequate basis exists for the exercise of federal power" and dismissing the suit for failure to demonstrate next-friend standing).

We have also held that next-friend standing is jurisdictional. In *Coalition*, a coalition of clergy, lawyers, and professors brought suit on behalf of the prisoners detained in Guantanamo, Cuba. 310 F.3d at 1156. The district court held that the Coalition did not have standing and, even if they did, no federal district court—including itself—could have jurisdiction over such a suit. *Id.* On appeal, we agreed that the Coalition could not establish next-friend standing. *Id.* However, we noted that "[t]he question before us is not the scope of the rights and privileges of the detainees themselves under either our Constitution or other international laws or agreements." *Id.* at 1164. Rather, we "consider[ed] only the rights of the members of the Coalition *to assert standing on behalf of the detainees and to seek habeas review of their detention.*" *Id.* at 1165 (emphasis added). We then dismissed the suit *and* vacated the district court's other holding that no court, or itself, may entertain a habeas action on behalf of a detainee held in Guantanamo, Cuba. *Id.* Additional Circuit precedent stands for the same proposition. *See Massie*, 244 F.3d at 1199 (affirming the district court's conclusion that a litigant seeking a stay of execution on behalf of another person "lacked standing" as a next friend under *Whitmore*).[8]

---

[8] The Majority argues that I err by using next-friend cases to conclude that we lack jurisdiction in this case. Maj. Op. at 11–12 n.5. But, next-friend standing is the only basis for jurisdiction PETA has alleged. Compl. at 3 (stating PETA "b[rought] this action on behalf of, and as next friend[] to, Naruto"). Both the Majority and I agree that PETA does not have next-friend standing and that animals can never have next-friend standing. This should end our inquiry. Further, as a general rule, the proponent of a case must advance its own injury. *Warth*, 422 U.S. at 499. Next-friend standing is an exception to this rule. *Whitmore*, 495 U.S. at 161–63. Naruto did not bring his own claim, PETA does not assert its own injury, and both the Majority and I agree PETA cannot be Naruto's next friend. There are no other jurisdictional bases on which to rest our authority to resolve this case.

## B. Standing must be jurisdictional because of its preclusive effect.

Judgments are preclusive. *See, e.g.*, *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001) ("Res judicata, also known as claim preclusion, bars litigation in a subsequent action of any claims that were raised or could have been raised in the prior action." (citations omitted)). If the putative next friend is *not* the appropriate entity, but the case is allowed to go forward, an improper representative can create preclusive precedent that, forever, bars the real party in interest. This preclusive effect alone requires that the question of next-friend standing be decided before the merits question and, if there is no next-friend standing, the case must be dismissed so the proper party may bring the case if she so chooses.

## C. *Cetacean* did not impliedly overrule *Coalition* or *Whitmore*.[9]

The Majority's conclusion that *Cetacean* somehow makes next-friend standing nonjurisdictional tortures the case and legal reasoning to reach such a conclusion. First, both *Whitmore* and *Coalition* were decided *before Cetacean*.

---

[9] The Majority accuses me of "pretend[ing] *Cetacean* does not exist, or that it states something other, or milder, or more ambiguous on whether cetaceans have Article III standing" and arguing for a "blanket exclusion of animals from Article III jurisdiction." Maj. Op. at 11–12 n.5, 13 n.6. My conclusion does not "pretend *Cetacean* does not exist"; it simply requires *Cetacean* be applied within the legal framework that governs cases where a plaintiff's claims are *brought by someone else*. Such claims may only be advanced by a next friend and, if one is not available or legally possible, those claims cannot be redressed. As I demonstrate in this section, *Cetacean* does not hold to the contrary.

Accordingly, those binding cases, which directly answer the question of whether next-friend standing is jurisdictional, were binding on the *Cetacean* panel as well.

Second, *Cetacean* is silent on next-friend standing. Indeed, even the briefing did not raise the issue. Rather, the *Cetacean* court seemed to conclude that animals may have Article III standing,[10] and then examined the statutory standing questions before it. 386 F.3d at 1174–79. The *Cetacean* court did not (though it most certainly should have) examine whether it was appropriate for a "self-appointed attorney" to bring a case on behalf of the "Cetacean Community" and articulate "their" interests. *Id.* at 1171–72. There can be no reasonable argument that the lawyer in *Cetacean* spoke to, and received instructions from his client, the "Cetacean Community." Rather, he functioned as a purported next friend, arguing that certain Navy sonar technology injured the members of the "Cetacean Community." *Id.*

Third, it is simply incorrect to conclude that an implied holding from a case that did not even address the question—in any form—somehow overrules explicit prior United States Supreme Court and Ninth Circuit precedent. "[U]nstated assumptions on non-litigated issues are not precedential holdings binding future decisions." *Sakamoto v. Duty Free Shoppers, Ltd.*, 764 F.2d 1285, 1288 (9th Cir. 1985); *see also Morales-Garcia v. Holder*, 567 F.3d 1058, 1064 (9th Cir. 2009) (stating that panels are bound by "prior decision[s]," but "the term 'decision,' however, encompasses only those issues that are raised or discussed" (citations

---

[10] Although binding precedent, I agree with the Majority that granting Article III standing to animals was an incorrect conclusion.

omitted)). Indeed, *Cetacean* itself noted: "'[W]here a panel confronts an issue germane to the eventual resolution of the case, *and resolves it after reasoned consideration* in a published opinion, that ruling becomes the law of the circuit, regardless of whether doing so is necessary in some strict logical sense.'" *Cetacean*, 386 F.3d at 1173 (emphasis added) (quoting *United States v. Johnson*, 256 F.3d 895, 914 (9th Cir. 2001) (Kozinski, J., concurring)); *see also Brecht v. Abrahamson*, 507 U.S. 619, 630–31 (1993) (refusing to follow prior cases where the issue had not been "squarely addressed"). Rather, the appropriate reading of *Cetacean*, because a three-judge panel *cannot* overrule a prior panel, *see Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003) (en banc), is that the *Cetacean* panel (1) ought not have reached the question it did; and (2) the fact that it seemed to conclude that an animal may have Article III standing does not remove the appropriate standing question that determines if the next friend may bring the action at all. It is simply unsupportable to conclude that a panel that *did not address an issue somehow overrules prior binding decisions that did address the issue*.

Fourth, the simple fact that *Cetacean* found that animals could have an Article III injury does not, automatically, create some form of right for third-parties to advance those claims (or, make next-friend standing nonjurisdictional and, as the Majority holds, simply inapplicable)! There are a multitude of Article III injuries that occur regularly, which people choose not to pursue. Because the individual with the injury opts *not* to pursue the claim does not somehow make the injury "public domain," so any random entity may bring the claim. Next-friend standing serves as a bar to such meddling, and *Cetacean* did not impliedly eviscerate that conclusion.

Not only did *Cetacean* not address animal next-friend standing, but no court has *ever* done so. *See Mount Graham Red Squirrel v. Madigan*, 954 F.2d 1441, 1448 n.13 (9th Cir. 1992) ("No party has mentioned and, notwithstanding our normal rules, we do not consider, the standing of the first-named party [Mount Graham Red Squirrel] to bring this action."); *Palila v. Hawaii Dep't of Land & Nat. Res.*, 852 F.2d 1106, 1107 (9th Cir. 1988) ("As an endangered species . . . , the bird . . . also has legal status and wings its way into federal court *as a plaintiff in its own right*." (emphasis added)), *abrogated in part by*, *Cetacean*, 386 F.3d at 1173 (9th Cir. 2004) ("*Palila IV*'s statements [regarding standing] are nonbinding dicta."); *Citizens to End Animal Suffering & Exploitation, Inc. v. New England Aquarium*, 836 F. Supp. 45, 49–50 (D. Mass. 1993) (finding named dolphin, Kama, lacked standing because "[t]he MMPA does not authorize suits brought by animals," and addressing the fact that Rule 17(b) would hold that animals lack "capacity" to be sued because they are property of their owners, concluding that "the MMPA and the operation of F.R.Civ.P. 17(b) indicate that Kama the dolphin lacks standing to maintain this action as a matter of law," and allowing "the removal of Kama's name from the caption of [the] case"); *Hawaiian Crow ('Alala) v. Lujan*, 906 F.Supp. 549, 551–52 (D. Haw. 1991) (finding that in *Northern Spotted Owl*, *Palila*, and *Mount Graham Red Squirrel*, no party had challenged the named standing of the animal itself and the case had other parties in the litigation and ultimately concluding that "the cited cases do not directly support plaintiffs' position here" and concluding that "the plain language of Rule 17(c) and section 1540(g) [did] not authorize the 'Alala to sue" because it was "clearly neither a 'person' as defined in section 1532(13), nor an infant or incompetent person under Rule 17(c)"); *Northern Spotted Owl v. Lujan*, 758 F. Supp. 621

(W.D. Wash. 1991) (failing to address standing for named first-party); *Northern Spotted Owl v. Hodel*, 716 F. Supp 479 (W.D. Wash. 1988) (failing to address standing for named first-party).

### D. The Majority's reliance on both Rule 17 and cases discussing "adequate protection" in the context of Rule 17 are simply inapplicable.

There is a crucial distinction between the cases cited by the Majority for the proposition that the only requirement for next friend suits is to ensure the "[incompetent parties] are adequately protected," Maj. Op. at 10 (quotation marks omitted and alterations in original), and the facts of *this* case and next-friend standing broadly. Each case cited is an example of an incompetent person bringing suit on his own behalf or such a person being sued by another party. I list the cases cited by the Majority to emphasize:

- *Krain v. Smallwood*, 880 F.2d 1119, 1121 (9th Cir. 1989) ("Lawrence Krain appeals the dismissal with prejudice of eight lawsuits *he filed, in pro se*, in the district court." (emphasis added)).

- *United States v. 30.64 Acres of Land*, 795 F.2d 796, 797 (9th Cir. 1986) ("The United States *filed a complaint against Starr* . . . to establish just compensation for 30.64 acres of Starr's land taken by the government . . . ." (emphasis added)).

- *Harris v. Mangum*, 863 F.3d 1133, 1136 (9th Cir. 2017) ("Plaintiff-Appellant Jason

Harris, an Arizona state prisoner, *filed pro se a lawsuit* in state court that was subsequently removed . . . ." (emphasis added)).

- *Roberts v. Ohio Cas. Ins. Co.*, 256 F.2d 35, 37, 39 (5th Cir. 1958) (finding where "Ohio Casualty Insurance Company . . . *filed suit* to set aside a ruling . . . *against the claimants*—the children and their grandmother," and children had not been represented by a guardian ad litem, the lower judgment granting relief to the plaintiff must be reversed and remanded for further proceedings (emphasis added)).

- *Westcott v. U.S. Fid. Guar. Co.*, 158 F.2d 20, 21 (4th Cir. 1946) ("The United States Fidelity & Guaranty Company . . . *brought a civil action* . . . seeking a declaratory judgment to the effect that it was not liable on a public liability policy . . . . The defendants in the civil action . . . were the insured, . . . George Mann, a minor." (emphasis added)).

Quite simply, there is *no* Article III jurisdiction question in *any* of these cases. Of course, the court would ensure such incompetent *persons* were adequately represented. The parties sought either redress in court as plaintiffs (but were not competent, and thus needed to be protected), or were pulled into court as defendants (and, thus, the court was required to ensure they were protected).

These circumstances do not exist here. Our question is whether a third-party (PETA) has next-friend standing—such that it can invoke the authority of this court—to stand in Naruto's shoes and advance his claims. It is not a question of whether Naruto was properly protected *or* was brought into this litigation as a defendant. Unlike the cases cited, Naruto (1) did not file this case himself; and (2) is not a defendant. PETA and Dr. Engelhardt initiated this suit on Naruto's behalf. As such, the cases cited by the Majority are simply inapplicable.

## IV. Conclusion

The question of PETA's next-friend standing was squarely before our panel. It was briefed and argued. By both concluding that next-friend standing is nonjurisdictional *and* reaching the merits of the Copyright Act question, the Majority allows PETA (with no injury or relationship to the real party in interest) to sue on Naruto's behalf, because it obtained legal counsel to allegedly represent Naruto. I cannot support this conclusion.[11]

---

[11] Indeed, this case is a prime example of the abuse the Majority opinion would now allow. In 2011, Slater (a photographer) went to the Tangkoko Reserve in Indonesia and setup a camera. Naruto, a crested macaque, pushed the shutter. Slater and Wildlife Personalities subsequently included the photographs in a book published by Blurb. In 2015, PETA—with no evidence it has any relationship whatsoever to Naruto—brought the instant suit claiming that Slater, Wildlife Personalities, and Blurb had violated Naruto's rights under the Copyright Act. PETA alleged that it "ha[d] a genuine concern for Naruto's well-being and [was] dedicated to pursing his best interests in this litigation" and that it "ha[d] the financial and operational resources and the professional expertise to administer and protect Naruto's copyright in the Monkey Selfies." Compl. at 4. PETA sought, *inter alia*, a court order

"[p]ermitting [PETA] to administer and protect Naruto's authorship of and copyright in the Monkey Selfies." *Id.* at 10.

PETA lost at the district court and appealed. When Dr. Engelhardt moved to be dismissed from the case, PETA twice affirmatively stated it would "fulfill the duties of a next friend." *Notice of Withdrawal of Next Friend Antje Engelhardt* (May 4, 2016); *see also Motion to Correct Caption* (May 10, 2016) ("PETA shall remain responsible for maintaining this litigation and fulfilling the *duties* of a [n]ext [f]riend pursuant to Federal Rule of Civil Procedure 17(c)." (emphasis added)).

However, PETA quickly changed its tune after oral argument. On September 11, 2017, PETA and Defendants moved to dismiss the appeal and vacate the lower court's judgment. *Joint Motion to Dismiss Appeal and Vacate the Judgment* (Sept. 11, 2017). But, unlike a normal settlement, the purported plaintiff, Naruto, *was not a party*. "Dismissal with vacatur is just and proper where, as here, the Plaintiff [Naruto] is *not a party to the settlement*." *Id.* at 1 (emphasis added). Rather, his purported next friend, PETA, *settled its own claims*: "the settlement resolves all disputes arising out of this litigation *as between PETA and Defendants*." *Id.* (emphasis added). It remains a mystery to me what "claims" PETA (a non-party) could settle. Nevertheless, even though PETA only settled its *own* claims, it maintained that "the settlement also renders moot the appeal filed on behalf of the Plaintiff Naruto." *Id.* Indeed, PETA went so far as to claim "[t]here is thus no longer any live case or controversy before this Court." *Id.* at 3.

Though it had previously attested it would "fulfill[] the duties of a next friend," PETA forgot its self-appointed role. "A 'next friend' *does not [itself] become a party to the . . . action* in which [it] participates, but *simply pursues the cause on behalf of [the party in interest]*." *Whitmore*, 495 U.S. at 163 (emphasis added). Whatever PETA did or did not do for Naruto (it only made representations to this court regarding what *it* obtained), PETA made sure to protect itself and with the *Joint Motion* sought to manipulate this court to avoid further negative precedent contrary to its institutional objectives. PETA cleverly argues that, because Naruto is not a party to the settlement and Defendants have maintained that PETA does not have next-friend standing, Naruto should not be bound by judgments entered because of PETA's actions. But, clever arguments

hardly conceal what is really occurring and the flip by PETA is quite surprising. One day, PETA maintains it will advance Naruto's interests, the next it maintains that Naruto cannot be bound by PETA's actions. It is clear: PETA's real motivation in this case was to advance its own interests, not Naruto's. PETA began this case purportedly seeking not only an injunction, but also a judgment "[d]eclaring Naruto to be the author and copyright owner of the Monkey Selfies with all attendant rights and privileges under law" and disgorgement. Compl. at 9–10. After oral argument, none of those objectives are, apparently, worth pursuing. Rather, when it came down to a possible negative, precedential ruling from the panel, PETA quickly sought to protect the *institution*, not the claimed real party in interest. PETA used Naruto as a "pawn to be manipulated on a chessboard larger than his own case." *Lenhard*, 443 U.S. at 1312 (Rehnquist, J., writing for the full Supreme Court).

Unfortunately, PETA's actions could be the new normal under today's holding.